In re David Larry DAVIS, Debtor.

Charles A. GOWER, Trustee, Plaintiff,

v.

FARMERS HOME ADMINISTRATION, Defendant.

Bankruptcy No. 81–60100–THOM.
Adv. No. 82–6005–THOM.

United States Bankruptcy Court,
M.D. Georgia,
Thomasville Division.

Sept. 23, 1988.

---

T. Jefferson Loftiss, II, Thomasville, Ga., Charles A. Gower, Columbus, Ga., J. Patrick Ward, Cairo, Ga., for plaintiff.

Lillian H. Lockary, Asst. U.S. Atty., Macon, Ga., for defendant.

## CORRECTED MEMORANDUM OPINION

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN T. LANEY, III, Bankruptcy Judge.

On November 13, 1984 this Court entered an Opinion and Judgment in favor of the Trustee in this case, Charles A. Gower, ordering Farmers Home Administration (hereinafter "FMHA") to return to the Debtor's estate $282,847.39 plus interest and directing the Trustee to turn over to the estate an additional $52,327.07 plus interest held in escrow pending the outcome of the litigation. The Court found the money to be in part an illegal preference payment to FMHA under 11 U.S.C. § 547(b) and (c)(5), and found FMHA's total claim to be subject to equitable subordination under 11 U.S.C. § 510 because of FMHA's misconduct in obtaining the money. Those findings were affirmed by the District Court in an order dated November 5, 1986, and its decision was affirmed by the Court of Appeals for the Eleventh Circuit on September 23, 1987. Because the facts and conclusions on the merits of this Adversary Proceeding are stated in full in the Opinion of November 13, 1984, this Opinion will include only those facts necessary to the resolution of the instant request for attorney fees under 28 U.S.C. § 2412.

The Debtor in 1981 borrowed $985,000.00 from FMHA to finance his 1981 crop. FMHA prepared a "Farm and Home Plan" covering the Debtor's proposed disbursements for expenses and anticipated receipts from crops. It also directed the debtor to set up a supervised bank account which would require the signature of both an FMHA official and the Debtor to disburse funds. However, FMHA did not insist upon strict performance of the terms of the Farm and Home Plan. FMHA allowed payment from the supervised bank account in accordance with the debtor's bills as he brought them in. In some instances checks were simply endorsed by FMHA and delivered to the Debtor. FMHA took a crop lien on the Debtor's 1981 crops and filed security agreements and UCC–1 financing statements. The Debtor later expanded his 1981 operation with rented farmland and obtained loans from other creditors, giving them crop liens. FMHA was aware that the Debtor had planted crops on other land than that on which FMHA held crop liens.

During the summer of 1981, FMHA reverted to strict compliance with the Farm

and Home Plan. It began to retain part of the proceeds from the Debtor's crops. FMHA received crop proceeds as to which it was neither secured nor perfected from the rented properties. FMHA knew that it had no lien on these crops, but it notified all buyers of the Debtor's crops to make their checks out jointly, whether the crops came from properties with FMHA liens or not. FMHA made misleading statements to the Debtor's other creditors, leading them to believe that if they advanced services and supplies to allow the Debtor to harvest his crops, they would be paid from the crop proceeds. FMHA then retained the proceeds and did not pay the other creditors.

On November 16, 1981, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. On February 12, 1982, the Trustee brought this Adversary Proceeding against FMHA to recover payments made to FMHA within 90 days prior to the Bankruptcy under 11 U.S.C. § 547(b) and 11 U.S.C. § 547(c)(5), for equitable subordination under 11 U.S.C. § 510 of other sums paid to FMHA within 90 days of the bankruptcy, and to subordinate FMHA's claim to the claims of the unsecured creditors. FMHA asserted that it was exempt from those actions of the Trustee under the doctrine of sovereign immunity and it moved to dismiss the case. This Court held that FMHA had waived sovereign immunity by asserting a claim in the case. *In re Davis*, 20 B.R. 519 (Bankr.M.D.Ga.1982). FMHA appealed that decision to the District Court, which upheld the decision of the Bankruptcy Court in an order dated October 22, 1982. FMHA then moved the District Court to certify the case for interlocutory appeal, and its motion was denied on February 28, 1983.

This case came on for trial on the merits on October 15, 1984. This Court held for the Trustee and found that FMHA had received preferential transfers and had engaged in misconduct requiring the equitable subordination of its claim. The Court also held that the Trustee does not simply stand in the shoes of the Debtor in an action to avoid preferential transfers. FMHA appealed the decision, and the Dis-

trict Court found that the Debtor had defrauded FMHA in obtaining the loan. It entered a summary judgment on July 10, 1985 dismissing the Trustee's claim under 28 U.S.C. § 2514 as forfeited because of the Debtor's fraud. This time the Trustee appealed, and the Eleventh Circuit Court of Appeals held that the Trustee's claims were for the benefit of the creditors and were not forfeited by the fraud of the Debtor. The case was remanded to the District Court for a ruling on the preference and equitable subordination findings. *In re Davis*, 785 F.2d 926 (11th Cir.1986). On November 5, 1986, the District Court affirmed the Findings of Fact and Conclusions of Law of the Bankruptcy Court. This decision was affirmed by the Eleventh Circuit Court of Appeals in an unpublished decision on September 23, 1987.

The attorneys for the Trustee in this case filed an application for attorney fees under the Equal Access to Justice Act (hereinafter "EAJA") on December 12, 1984. A hearing was originally set on the application for March 12, 1985, but was continued after the appeal of the Bankruptcy Court decision. After the final judgment in the matter, the Trustee again applied for attorney fees under EAJA on January 4, 1988. The Government objected. A hearing was held on February 25, 1988, and briefs were filed. There was an interim award of fees from the estate in this case on March 24, 1986 in the amount of $60,000.00 to Charles A. Gower, $30,000.00 to J. Patrick Ward, and $23,000.00 to T. Jefferson Loftiss, II. The Trustee agrees that any award of fees under EAJA would first be used to reimburse the estate for the previous fee award.

The Trustee's application requests attorney fees under EAJA at $150.00 per hour, with affidavits attached showing 812.35 hours for Mr. Gower, 747.73 hours for Mr. Ward, and 539.9 hours for Mr. Loftiss. He contends that special factors such as the limited availability of qualified attorneys and the length of the litigation warrant a higher rate than $75.00 per hour, and that bankruptcy is an "identifiable practice specialty" which was required in the case.

The United States objects to the fee application on several grounds. It contends that the Trustee is not eligible to recover under EAJA, since he has other means of compensation, that the Trustee has not shown a qualified net worth under EAJA, that the Trustee is not a prevailing party on some issues, that the Government was substantially justified in all of its agency actions and litigation positions, that there are special circumstances making an award unjust, that the Trustee unduly prolonged the litigation, and that the fee application is inadequate.

The attorneys for the Trustee were employed as authorized under 11 U.S.C. § 327. The attorneys for the Trustee are seeking an award of attorney fees from the Government under 28 U.S.C. § 2412(d), known as the Equal Access to Justice Act. Section 2412(d)(1)(A) provides as follows:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

Section 2412(d)(1)(B) requires that an application for fees:

> show that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses are computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

Section 2412(d)(2)(A) is on the amount of fees that will be allowed under EAJA: "The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... attorney fees shall not be awarded in excess of $75.00 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."

Section 2412(d)(2)(B) covers who may receive an award of fees under EAJA: "[P]arty means (i) an individual whose net worth did not exceed $2,000,000.00 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000.00 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed."

Subsection (D) defines "position of the United States" to include: "in addition to the position taken by the United States in this civil action, the action or failure to act by the agency upon which the civil action is based; except that fees and expenses may not be awarded to a party for any portion of the litigation in which the party has unreasonably protracted the proceedings...."

The purpose of EAJA was stated in § 202 of Pub.L. 96–481, the 1980 amendments to EAJA. "(c) It is the purpose of this title (1) to diminish the deterrent effect of seeking review of, or defending against, governmental action by providing in specified situations an award of attorney fees, expert witness fees, and other costs against the United States...." Section 2412(d) became effective on October 1, 1981

and expired on October 1, 1984. It was reenacted "as if [it] had not been repealed" in 1985. Pub.L. No. 99–80, § 6, 99 Stat. 183, 186 (1985). The 1985 amendments added the language including the action or failure to act by the agency upon which the civil action is based to the requirement that the position of the United States be substantially justified.

■■■ The government has contended that the Trustee is not an eligible party to receive an award of attorney fees under § 2412(d). Section 2412(d)(2)(B) included among eligible parties any association or organization with a net worth not exceeding $7,000,000.00. "Association" and "organization" are both broad terms. *Black's Law Dictionary* defines an organization as including "a corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership or association, two or more persons having a joint or common interest, or any other legal or commercial entity." Estates are included in that definition. The organization's net worth must not exceed $7,000,000.00 at the time the civil action is filed. If the real party in interest here is the estate, its net worth is under the statutory amount, since the Chapter 7 estate was insolvent, except for the amounts recovered against the United States and others. The real party in interest is the party who will pay the attorney fees if the government does not. *Unification Church v. I.N.S.*, 762 F.2d 1077, 1082 (D.C.Cir.1985). Since the trustee's claims are for the benefit of the unsecured creditors, *In re Davis*, 785 F.2d 926, 927 (11th Cir.1986), he is the proper party to proceed on behalf of the estate. *Matter of First Colonial Corp.*, 544 F.2d 1291, 1297 (5th Cir.1977). Since the estate is the real party in interest and the trustee and his attorneys have acted on its behalf, the possibility of an award of attorney fees from the estate does not prevent an award of fees under EAJA. A party's attorney is not denied fees under EAJA merely because the party is able to pay his attorney.

*Duncan v. Poythress*, 777 F.2d 1508, 1511 (11th Cir.1985).[1]

No cases have held that a trustee cannot be awarded attorney fees under the Equal Access to Justice Act. *Flournoy v. Hershner* does not stand for that proposition and is distinguishable. The Trustee was not eligible for an award of attorney fees in that case because it was not a civil action as required by 28 U.S.C. § 2412(d)(1)(A), but was an appeal of an administrative decision of the Bankruptcy Judge. *Flournoy v. Hershner*, 68 B.R. 165 (M.D.Ga. 1986). It was not an Adversary Proceeding brought by the Trustee in his representative capacity, as is this case.

One case has permitted the trustee of a bankruptcy estate to file an application under EAJA. In *In re Estate of Lee*, a partnership applied for attorney fees under EAJA, and the trustee of the bankruptcy estate of one of the partners was substituted for the partner as a plaintiff. The action was held to be property of the debtor's estate. *Hill, Trustee of the Estate of Lee v. N.F.I.P.*, Case No. H–83–7013 (S.D.Tex., Jan. 23, 1986). The Fifth Circuit Court of Appeals reversed the District Court's decision on the amount of attorney fees, but did not hold that an award should have been denied or that the Trustee was not a proper party. *In re Estate of Lee*, 812 F.2d 253 (5th Cir.1987). A debtor in bankruptcy has been awarded attorney fees under EAJA for a violation of the automatic stay by the Social Security Administration. *In re Hagan*, 44 B.R. 59 (Bankr.D.R.I. 1984). Other cases have awarded attorney fees under EAJA to the representatives of decedents' estates. *See Hoffman v. Heckler*, 656 F.Supp. 1136 (E.D.Pa.1987). Including bankruptcy estates and their representative trustees among the parties entitled to awards under EAJA furthers the intent of the statute of encouraging organizations to seek review of unreasonable governmental action. Precluding trustees would discourage them from recovering estate assets from government creditor agencies. The trustee is therefore an eligible

---

1. *Duncan v. Poythress* was decided under 42 U.S.C. § 1988, but the standards for fee applications are the same as in 28 U.S.C. § 2412. *Hens-* *ley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

party to recover attorney fees under EAJA.

█ The Trustee also meets the other threshold requirements under § 2412. The Adversary Proceeding is a civil action, and the Trustee is a prevailing party in the litigation. A party "prevails" for EAJA purposes when "he or she has received substantially the relief requested or has been successful on the central issue." *Martin v. Heckler,* 773 F.2d 1145, 1149 (11th Cir.1985). The Trustee received substantially the relief he requested from the Bankruptcy Court, and that decision was eventually upheld by the District Court and the Court of Appeals. His loss on one count and the fact that he dropped some counts from his original complaint in his recast complaint do not prevent him from being a prevailing party.

█ 28 U.S.C. § 2412(d)(1)(A) states that "a court shall award to a prevailing party ... fees ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." The position of the United States includes "the action or failure to act by the agency upon the which the civil action is based...." The 1985 amendments including agency actions "shall apply to cases pending on or commenced on or after the date of the enactment of this Act," August 5, 1985. *Pub.L. No. 99–80,* § 7(a), 99 Stat. 183, 186. If the Court finds that the government's original agency action was not substantially justified, it need not continue to inquire into the substantial justification of the government's litigation position. *Russell v. National Mediation Bd.,* 775 F.2d 1284, 1291–92 (5th Cir.1985). The government bears the burden of proof in showing that its position was substantially justified. *Haitian Refugee Center v. Meese,* 791 F.2d 1489, 1496 (11th Cir.1986). It also has the burden of proving the existence of any special circumstances. *Martin v. Heckler* at 1150.

█ The United States Supreme Court has defined "substantially justified" as "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* —— U.S. ——, ——, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). The Supreme Court stated that that standard was no different than the "reasonable basis both in law and fact" standard that the Eleventh Circuit Court of Appeals had been using. *See Haitian Refugee Center* at 1497. Whether or not the position of the United States was substantially justified is to be determined on the basis of the record made in the case. 28 U.S.C. § 2412(d)(1)(B). This Court's opinion on the merits makes clear that FMHA's action was not substantially justified, and the government has presented no new evidence or arguments that would cause this Court to find otherwise. It found that FMHA knowingly collected proceeds from crops on which it had no lien, and that it made misleading statements to the debtor's other creditors to persuade them to advance services and supplies to the debtor to allow him to harvest his crops. It specifically held that FMHA had engaged in inequitable conduct. This can hardly be considered substantially justified action by the government agency.

"[T]he fact that one other Court agreed or disagreed with the Government does not establish whether its position was substantially justified." *Pierce,* —— U.S. at ——, 108 S.Ct. at 2552. "The United States is not liable for the payment of fees and expenses merely because it lost. Neither is the United States exempted from the payment of fees and expenses merely because it prevailed at some point in the judicial process—before a magistrate or in the District Court, for example." *Martin v. Heckler,* 754 F.2d 1262, 1264 (5th Cir.1985). The trustee originally lost in the District Court in this case, but the Court did not reach the reasonableness of FMHA's actions in that decision.

The trustee is seeking a rate of $150.00 per hour. Section 2412(d)(2)(A)(ii) sets a top rate of $75.00 per hour "unless the Court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." The Court has not found

the evidence presented on market rates and special factors to be very persuasive. The trustee presented affidavits from Thomasville attorneys indicating that their standard flat rate is around $75.00 per hour, but that a rate of $125.00 per hour or more would be appropriate in this case, and he submitted evidence of rates received by Atlanta attorneys in an uncontested fee application in the Middle District of Georgia. The government presented a decision in which $50.00 per hour was awarded in a Middle District of Georgia case in 1985. The trustee presented no evidence of an increase in the cost of living.

The Supreme Court's opinion in *Pierce v. Underwood* discussed the $75.00 per hour cap set in the statute. The Supreme Court held that Congress had meant to limit EAJA fees to $75.00 per hour regardless of the prevailing market rate and it limited special factors to those "not of broad and general application." *Pierce*, —— U.S. at ——, 108 S.Ct. at 2554. It found most special factors considered by the District Court to be too generally applicable. The factors that the District Court had considered in *Pierce* were taken from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). The Eleventh Circuit has held that the *Johnson* factors are to be applied in calculating EAJA fee awards, *Florida Suncoast Villas v. United States*, 776 F.2d 974, 975 (11th Cir.1985), although it had anticipated that *Pierce* would resolve the questions concerning the use of special factors in *United States v. Prop. Located at 4880 S.E. Dixie Hwy.*, 838 F.2d 1558, 1566 (11th Cir.1988). The general standards for setting fees in the Eleventh Circuit are now found in *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir.1988). *Norman* uses a lodestar approach based on a reasonable hourly rate of "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* at 1299. This reasonable hourly rate would be the market rate allowed in EAJA up to the $75.00 per hour cap. *Norman*, however, still allows the use of the *Johnson* factors to determine the lodestar rate. *Id.* at 1299–1300.

*Pierce* has ruled out the use of most of the *Johnson* factors as special factors to be used in setting a rate in EAJA cases. *Pierce*, —— U.S. at ——, 108 S.Ct. at 2554. The unacceptable special factors included the novelty and difficulty of issues, the undesirability of the case, the work and ability of counsel, the results obtained, customary fees and awards in other cases, and the contingent nature of the fee. *Id.* Of the *Johnson* factors that *Pierce* did not consider, the time and labor required would determine the number of hours to award fees on, but would be of too broad and general application to use as special factors. The preclusion of other employment and the time limitations imposed are also probably too general to consider. As for experience and skills, *Pierce* requires "some distinctive knowledge or specialized skill needful for the litigation in question— as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language." *Id.* While bankruptcy can be a specialty and is a distinct field of the law, all cases will involve skill in some area of the law. It is not the "identifiable practice specialty" that patent law is. The statute requires "limited availability of qualified attorneys for the proceedings involved." With the fairly strict standards set by the Supreme Court of "qualified for the proceedings involved in some specialized sense, rather than just in their general legal competence," this Court is not convinced that availability of qualified bankruptcy attorneys was limited.

 The cost of living adjustment to $75.00 an hour is measured from the original enactment date of EAJA in 1981. *Baker v. Bowen*, 839 F.2d 1075, 1084 (5th Cir. 1988). Cost of living evidence can be presented by using the Consumer Price Index published by the Bureau of Labor Statistics. *See Garcia v. Schweiker*, 829 F.2d 396, 401 (3d Cir.1987); *Faulkner v.*

*Bowen,* 673 F.Supp. 1549, 1551 (D.Or.1987). The Trustee presented no evidence of an increase in the cost of living, except for a statement that the cost of living had obviously increased since 1981. This is not enough to justify an award at a higher rate than the statutory cap. Section 2412(d)(2)(A) does not require an adjustment for cost of living. *Baker* at 1084. A footnote in *Norman* suggests that the Court should not allow an applicant to supplement his fee application after hearing. *Norman* at 1303. The Court therefore holds that the appropriate rate in this case is $75.00 per hour.

■ The United States has objected that the trustee's fee application is inadequate. It objects that hours are undocumented and unsubstantiated, that there is duplication of hours, that fees are too high for travel and administrative matters, that the rate requested is too high, and that it is not itemized as to issues on which the trustee prevailed. The Court has determined that the rate will be limited to $75.00 per hour. The fee applicant bears the burden of establishing his entitlement to an award and of documenting the hours expended. *Hensley v. Eckerhart* 461 U.S. at 437, 103 S.Ct. at 1941.

Bankruptcy Rule 2016 sets forth the requirements for bankruptcy fee awards from the estate. It requires "an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." The applicant must exclude excessive, redundant and otherwise unnecessary hours from the amount claimed. *Hensley* at 434, 103 S.Ct. at 1939–40; *Norman* at 1301. The Eleventh Circuit Court of Appeals in *In re Beverly Mfg. Corp.* required a statement which recites the number of hours worked and contains a description of how each of those hours was spent. Entries must not "lump" together different services in one time period. The descriptions of work done must be specific.

*In re Beverly Mfg. Corp.,* 841 F.2d 365, 370 (11th Cir.1988).

■ Fees may not be awarded for work on unsuccessful, unrelated claims. *Hensley* 461 U.S. at 435, 103 S.Ct. at 1940. However, where "the lawsuit cannot be viewed as a series of discreet claims", and the issues are intertwined, the attorneys should be fully compensated for their work on the case as a whole. *Haitian Refugee Center* at 1500. The original claims in this case were not unrelated and were all based on the allegedly unreasonable actions of FMHA. Under these circumstances, the Court does not find that it is necessary to reduce the award for unsuccessful claims.

■ No double recovery will be permitted and any award under EAJA must be used to reimburse the estate up to the amount previously awarded. *Watford v. Heckler,* 765 F.2d 1562, 1566 (11th Cir. 1985). Fees or time spent on the fee application and fee litigation may be awarded. *Trichilo v. Secretary of H.H.S.,* 823 F.2d 702, 708 (2d Cir.1987); *Haitian Refugee Center v. Meese,* 791 F.2d 1489, 1500 (11th Cir.1986).[2] The Trustee agrees that no fees may be awarded for hours worked by the attorney whose employment was not authorized under Bankruptcy Rule 2014, Walter Van Heiningen. With a rate of $75.00 per hour, the Court does not feel that it needs to reduce fees for travel time. The statute specifically allows expenses to be awarded: "a court shall award to a prevailing party ... fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action" § 2412(d)(1)(A). Mr. Gower and Mr. Loftiss have submitted no evidence of expenses. Mr. Ward included his expenses in his affidavit, so he may be awarded expenses as approved by the Court.

■ Where an inadequate fee application is submitted, a Court is permitted to deny the application for fees entirely. *Beverly Mfg.* at 371. The Court may attempt to identify specific hours that should be

---

**2.** "Fees for fees" were not awarded in *Haitian Refugee Center* under the circumstances of that particular case, but the Court did not hold that

they would be denied in all cases. *Haitian Refugee Center v. Meese,* 804 F.2d 1573, 1574 (11th Cir.1986).

eliminated, or it may simply reduce the award. *See Hensley* 461 U.S. at 436–37, 103 S.Ct. at 1941. The Court is not permitted to allow counsel to supplement the inadequate fee application after the hearing. *Norman* at 1303. The Court agrees with the United States that many hours in the fee applications are undocumented and unsubstantiated. All three affidavits lump together several items in a single entry. Entries are not detailed as to "the specific nature of each service performed and its relation to the Bankruptcy proceeding." *Beverly Mfg.* at 370. The Court cannot determine from the affidavits if there has been duplication, if hours were reasonably spent, or even if they were spent on this adversary proceeding. At the hearing on these fee applications, however, extensive testimony was given on the reasonableness and purpose of hours expended. Specific items were questioned and explained.

As to Mr. Gower's application, the Court is satisfied that all hours listed were reasonably spent on this case. Mr. Gower in testimony explained many of his entries. The number of hours listed are reasonable for all the litigation and appeals involved in this case, the years the case has been pending, and the results obtained. The Court has compared all three affidavits with the hours listed in the earlier interim fee application, and it is satisfied that Mr. Gower has included no hours in this fee application having to do with the other adversary proceedings and other matters involved in this case. The Court will therefore award to Mr. Gower fees for all hours listed at $75.00 per hour.

There are other problems with the affidavits submitted by Mr. Loftiss and Mr. Ward. They have apparently included hours that were actually spent on other aspects of the debtor's case. With the general lack of detail, it is impossible for the Court to determine specifically which hours were spent on the litigation with FMHA. There are some entries on each application that specifically say that time was spent on other cases. Examples in Mr. Loftiss' affidavit include an entry on July 17, 1982 of one and one-half hours on "review of *Ford Motor Credit* case", and an

entry on August 6, 1984 of three-tenths of an hour for "telephone conversation from Jeff Loftiss in Columbus to Walter Van Heiningen in Thomasville re: *Pippin* and *Rodenberry* cases." Mr. Ward's affidavit includes an entry on August 30, 1983 for 8.5 hours of "travel to Columbus 160 x .20" and "conf. Charles Gower to file two law suits against Pippin and Rodenberry." Both applications attribute all telephone calls from the interim fee application that do not list a subject matter to the litigation with FMHA. Mr. Loftiss' affidavit on page 16 is a copy of a page from the interim fee application with some entries blanked out. All entries on that page in the interim fee application that list a subject matter indicate that they had to do with the *Pippin* and *Rodenberry* cases. The Court's docket sheet shows that the activities in the *Davis* case at that time had to do with the *Pippin* and *Rodenberry* adversary proceedings. However, all telephone conversations entries from that page of the interim fee application were included in the fee application for fees under EAJA. Most of the pages in Mr. Loftiss' interim fee application were transferred directly without subtractions into this fee application. Mr. Loftiss' application also includes entries that say they are for time spent by Walter Van Heiningen, who is not authorized as an attorney for the trustee in this case. Examples are on pages 8 and 10 of Mr. Loftiss' affidavit. The Court has no way of knowing how many other hours in this fee application were actually expended by Mr. Van Heiningen. Of 579.2 hours in the interim fee application Mr. Loftiss' claims to have spent 483.9 hours on FMHA litigation, calculated through February 13, 1986, even though there were six other adversary proceedings in this case, two of which also involved appeals.

Mr. Ward's interim fee application ostensibly removed hours not related to the litigation with FMHA. His original EAJA application included entries from other cases with the hours bracketed and subtracted out. The interim fee application, for reasons unknown to the Court, blanked out those bracketed hours and requested

fees only for the hours listed as related to FMHA. This fee application once again lists the entries on other cases with the hours bracketed out. However, the application does not actually exclude all hours related to other cases. Mr. Ward's interim fee application claims that of 731.1 total hours, 691.13 were spent on the FMHA litigation. Mr. Ward's affidavit includes several entries that say they are related to the other cases. Page 28 includes 1.5 hours reviewing the record in *Pippin* on the day before the *Pippin* pre-trial conference. The pre-trial itself was subtracted out, but the review of the record was not. Most pages have no subtractions for work on other cases at all. Most entries, especially the telephone calls, do not list the subject matter at all, so that the Court cannot determine which hours were actually spent on the litigation with FMHA. The problems are the same with his entries for expenses.

Under the authority of *Beverly Manufacturing*, the Court could deny the awards altogether to these two attorneys. *Beverly Mfg.* at 371. However, this would mainly serve to penalize the estate and to provide a windfall to FMHA. A large number of the hours listed in the fee application obviously were spent on the FMHA case. The Court therefore has gone over the fee applications and will award fees only for hours clearly spent on the FMHA case. These include entries that specifically mention FMHA or its attorneys, hours on activities such as hearings or preparations for filing of items like motions that the Court's docket sheet shows were on FMHA matters, and all time spent on the case after the last other adversary proceeding was concluded on January 10, 1986. Most of the entries subtracted are several pages of entries telephone calls with no subject matter listed.

Mr. Ward's expenses are treated the same way. Only expenses clearly related to this case are included in the Court's award. Some of the travel expenses and most of the long-distance telephone calls are excluded because the Court cannot determine if they are for work on the *FMHA* case. Some of his entries as listed would

seem to involve no expense, such as $175.00 on January 2, 1982 for a conference "re records." There is no mention of travel involved. Expenses like these have not been included. He has also included expenses that are listed next to hours he bracketed and subtracted; examples are on pages 23 and 24 of his affidavit.

The amounts to be awarded are calculated as follows:

**Charles A. Gower:**
812.35 hours on FMHA
$\times 75.00$

$60,926.25 EAJA fee award
previous fee award: $60,000.00
hours up to hearing on interim fee award
 (entries through 1/31/86): 1160.34
hours on FMHA through 1/31/86
 (last entry 9/2/85): 593.35
593 divided by 1160.34 = .5113 (percentage of time on FMHA)
$60,000.00
$\times$ .5113

$30,678.00
$30,678.00 of the EAJA fee award goes into the estate to reimburse it for the time in the first fee award spent on the FMHA litigation. This prevents a double recovery.
$30,248.25 of the EAJA fee award goes to Mr. Gower for time spent on the FMHA litigation that has not yet been reimbursed.

**T. Jefferson Loftiss II:**
FMHA hours claimed: 539.9
FMHA hours allowed: 337.3
337.3 hours on FMHA
$\times 75.00$

$25,297.50 EAJA fee award
interim fee award: $23,000.00
hours up to hearing on interim fee award
 (entries through 2/13/86): 579.2
allowed hours on FMHA through 2/13/86: 281.3
281.3 divided by 579.2 = .4856 (percentage of time on FMHA)
$23,000.00

$\times$ .4856

$11,168.80
$11,168.80 of the EAJA fee award goes into the estate to reimburse it for the time in the first fee award spent on the FMHA litigation. $14,128.70 goes to Mr.

Loftiss for time spent on the FMHA litigation that has not yet been reimbursed.

**J. Patrick Ward:**

hours claimed on FMHA: 747.73
hours on FMHA allowed: 352.2

 352.2 hours on FMHA
 $\times 75.00$

$26,415.00 EAJA fee award
expenses claimed on FMHA: $ 2,422.15
expenses on FMHA allowed: $ 631.56
interim fee award: . $30,000.00
 hours up to hearing on interim fee award (entries through 3/14/86): 691.13 (Since only FMHA entries were shown on the applications, the Court based its interim fee award only on the FMHA total shown, not on the total hours shown.)
allowed hours on FMHA through 3/14/86: 321.5

 321.5 divided by 691.13 = .4652
 (percentage of time on FMHA)
 $30,000.00

 $\times$ .4652
 ―――――――
 $13,956.00

$13,956.00 of the EAJA fee award goes into the estate to reimburse it for the time spent on the FMHA litigation.

$12,459.00 goes to Mr. Ward for time spent on the FMHA litigation that has not yet been reimbursed along with the award of $631.56 for expenses.

Accordingly, the Court finds that the attorneys for the trustee are entitled to an award of fees under 28 U.S.C. § 2412(d). The Court has determined that Charles A. Gower is entitled to an award of $60,926.25, T. Jefferson Loftiss, II is entitled to an award of $25,297.50, and J. Patrick Ward is entitled to an award of $26,415.00 for fees and $631.56 for expenses. The applicants are hereby awarded attorneys fees in the amount of $112,638.75 and expenses in the amount of $631.56, to be paid by the United States.

An Order in accordance with this opinion will be entered separately.