In re David Larry DAVIS, Debtor.

Charles A. GOWER, Trustee,
Plaintiff–Appellee,

v.

FARMERS HOME ADMINISTRATION,
Defendant–Appellant.

No. 89–8359.

United States Court of Appeals,
Eleventh Circuit.

April 30, 1990.

Lillian Lockary, Asst. U.S. Atty., Macon, Ga., Robert M. Loeb, William Kanter, U.S. Dept. of Justice, Civil Appellate Staff, Washington, D.C., for defendant-appellant.

Charles A. Gower, Columbus, Ga., J. Patrick Ward, Loftiss, Van Heiningen & Ward, Cairo, Ga., T. Jefferson Loftiss, II, Loftiss, Van Heiningen & Ward, Thomasville, Ga., for plaintiff-appellee.

Before JOHNSON and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

JOHNSON, Circuit Judge:

The Farmers Home Administration ("FmHA") appeals from the district court's affirmance of the bankruptcy court's award of attorney's fees to Charles A. Gower, the Trustee of the Bankruptcy Estate of David Larry Davis, under the Equal Access to Justice Act, 28 U.S.C.A. § 2412 (West Supp.1989) ("EAJA").

## I. STATEMENT OF THE CASE

Davis, a farmer, borrowed $985,000 from FmHA in 1981. It was later determined that Davis defrauded FmHA in obtaining this loan, and he pleaded guilty to federal fraud charges under 18 U.S.C.A. § 1014 on May 12, 1983. On November 16, 1981, Davis filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C.A. §§ 701–766 (West 1979 & Supp. 1989). On February 12, 1982, the Trustee brought an adversary action against FmHA to set aside certain preferential payments made to FmHA during the 90–day period prior to Davis's Chapter 7 petition. *See* 11 U.S.C.A. § 547(b), (c)(5) (West 1979 & Supp.1989). The Trustee also sought to have FmHA's claims against Davis's estate equitably subordinated to those of other creditors. *See* 11 U.S.C.A. § 510(c) (West 1979). After rejecting FmHA's claim of sovereign immunity from the Trustee's action, *see In re Davis*, 20 B.R. 519 (Bkr.M.D. Ga.1982), the bankruptcy court, on November 13, 1984, ruled in favor of the Trustee, ordering return of the preferential transfers and equitably subordinating FmHA's claims to those of Davis's other creditors. The court found that FmHA's conduct toward the other creditors was "at best, misleading," and that "FmHA obtained an unfair advantage over the other unsecured creditors in this case." On December 12, 1984, the Trustee filed a timely application in the bankruptcy court for attorney's fees under section 2412(d)(1)(A) of the EAJA; this application was stayed, however, when FmHA appealed to the district court.[1]

---

1. Although technically premature because the bankruptcy court's judgment had not yet become nonappealable (and, as noted, actually *was* appealed), *see* 28 U.S.C.A. § 2412(d)(2)(G), the Trustee's EAJA application under these circumstances was nonetheless timely. *See James v. Department of Housing and Urban Dev.*, 783 F.2d 997, 998–99 & n. 2 (11th Cir.1986); *see also*

The district court reversed the bankruptcy court on July 10, 1985, ruling that the Trustee's claim was forfeited under 28 U.S.C.A. § 2514 because of Davis's admitted fraud against FmHA. This Court reversed the district court, ruling that because the Trustee's action was on behalf of the other creditors, the bankrupt debtor's fraud was irrelevant. *In re Davis*, 785 F.2d 926, 927 (11th Cir.1986).[2] On November 5, 1986, the district court, on remand, affirmed the bankruptcy court's decision of November 13, 1984. On September 23, 1987, this Court summarily affirmed the district court under 11th Circuit Rule 36–1. The Trustee renewed his EAJA application in the bankruptcy court on January 4, 1988, and a hearing was held on February 25, 1988. FmHA objected to any award of attorney's fees on the grounds that (1) the Trustee was not an eligible "party" to recover fees under the EAJA, *see* 28 U.S.C.A. § 2412(d)(2)(B), (2) the Trustee did not qualify under the EAJA's net-worth limitations, *see id.*, (3) FmHA was substantially justified in its position, *see id.*, § 2412(d)(1)(A), and (4) special circumstances (in particular, Davis's fraud) made an award of fees unjust, *see id.* On September 23, 1988, the bankruptcy court overruled FmHA's objections and awarded a total of $112,638.75 in attorneys' fees and $631.56 in expenses to the Trustee and his two co-counsel, T. Jefferson Loftiss, II, and J. Patrick Ward.[3] *In re Davis*, 91 B.R. 627, 638 (Bkr.M.D.Ga. 1988). The court found, *inter alia*, that a bankruptcy trustee was an eligible "party" to receive an EAJA award and that the EAJA's net-worth and number-of-employees limitations were satisfied because the Chapter 7 estate was insolvent. *Id.* at 632–33.

FmHA appealed to the district court, which affirmed the bankruptcy court's fee award on March 2, 1989. The district court, citing Davis's fraud against FmHA, expressed in dicta the opinion that FmHA's position was substantially justified and that special circumstances made an award of attorney's fees to the Trustee unjust. The district court concluded, however, that its views on those issues were precluded by this Court's reversal of its July 10, 1985 decision. The district court did not discuss the EAJA eligibility issues concerning the Trustee, but its disposition of the case implicitly affirmed the bankruptcy court's holdings on those issues. The FmHA thereafter appealed to this Court, raising the four issues noted above,[4] and also contending, for the first time, that the bankruptcy court lacked jurisdiction to award attorney's fees under the EAJA.[5] The two issues which we address are questions of law subject to *de novo* review.

## II. ANALYSIS

### A. *Jurisdiction*

The EAJA states simply that attorney's fees are awardable by "a court ... in any civil action ... brought by or against the United States in any court having jurisdiction of that action." 28 U.S.C.A. § 2412(d)(1)(A); *see also id.*, § 2412(b). FmHA does not contest that the bankruptcy court had jurisdiction over the voidable-preference/equitable-subordination action brought by the Trustee in this case. *See* 28 U.S.C.A. § 157(b)(2)(F), (O) (West Supp. 1989). It thus might appear, *ipso facto*, that the bankruptcy court had jurisdiction to entertain the Trustee's EAJA application. This Court, however, in *Bowen v.*

---

*Martindale v. Sullivan*, 890 F.2d 410, 413 n. 5 (11th Cir.1989).

**2.** This Court also held that 28 U.S.C.A. § 2514 applied only to actions in Claims Court, and not to actions in bankruptcy and district court for more than $10,000. *See* 28 U.S.C.A. § 1346(a)(2) (West Supp.1989) (concurrent jurisdiction of district court and Claims Court over claims under $10,000); *Davis*, 785 F.2d at 927 & n. 4.

**3.** The Trustee in this case is an attorney and performed the bulk of the legal work on behalf of the estate himself.

**4.** For reasons discussed below, *see* notes 14 and 18, *infra*, we do not reach the latter three issues noted above.

**5.** It is well established that this Court will address a jurisdictional issue on appeal even though never previously raised. *See Simanonok v. Commissioner of Internal Revenue*, 731 F.2d 743, 744 (11th Cir.1984).

*Commissioner of Internal Revenue,* 706 F.2d 1087 (11th Cir.1983), held that despite the EAJA's reference to "any court having jurisdiction of th[e] action," only "court[s] of the United States" as defined in 28 U.S. C.A. § 451—that is, courts whose judges enjoy the characteristics of tenure "during good behavior" and irreducible salary provided by Article III of the Constitution— have jurisdiction to award fees under the EAJA.[6] *See Bowen,* 706 F.2d at 1088 ("[W]e conclude that Section 2412(d)(1)(A) authorizes an award of attorney's fees only by an Article III court.").

The specific holding in *Bowen* was that the non-Article III Tax Court lacked jurisdiction to award EAJA fees. *See id.* (noting that a Senate co-sponsor of the EAJA specifically contemplated that EAJA fees would be available in "tax-related matters" before the district courts but not "before the Tax Court"). The language of *Bowen,* however, unambiguously controls the jurisdictional issue presented in this case. Fur-

thermore, the legislative history of the EAJA states:

Section 2412(b) permits a court in its discretion to award attorney fees and other expenses to prevailing parties in civil litigation involving the United States to the same extent it may award fees in cases involving other parties. *The courts so empowered are those defined in section 451 of title 28, United States Code.* This is consistent with the present law in section 2412.

H.R.Rep. No. 96–1418, 96th Cong., 2d Sess. 17, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4953, 4984, 4996 (emphasis added). The language of section 2412(d)(1)(A) is identical in relevant respects to that of section 2412(b), and the House Report does not suggest any different definition of the courts empowered to award fees under section 2412(d)(1)(A). *See id.* at 18, 1980 U.S.Code Cong. & Admin.News at 4997.[7] Bankruptcy courts are

---

6. When the EAJA was enacted in 1980, § 451 provided, in relevant part:

As used in this title:

The term "court of the United States" includes the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the Court of Claims, the Court of Customs and Patent Appeals, the Customs Court and any court created by Act of Congress the judges of which are entitled to hold office during good behavior.

Effective November 1, 1980, § 451 was amended to redesignate the Customs Court as the Court of International Trade. Effective October 1, 1982, § 451's references to the Court of Claims and the Court of Customs and Patent Appeals were deleted, reflecting the merger of those courts into the new Court of Appeals for the Federal Circuit and the creation of the new, non-Article III Claims Court. *See* Federal Courts Improvement Act of 1982, P.L. 97–164, 96 Stat. 25, *codified in part at* 28 U.S.C.A. §§ 171–177, 1295 (West Supp.1989).

7. The Federal Circuit, in *Essex Electro Engineers, Inc. v. United States,* 757 F.2d 247, 250–52 (Fed.Cir.1985), declined to follow *Bowen* and ruled that the new, non-Article III Claims Court had jurisdiction to award EAJA fees. The Federal Circuit, discounting the legislative history cited above, relied in part on the fact that the Federal Courts Improvement Act of 1982 ("FCIA") provided that any matters pending before the trial commissioners of the former, Article III Court of Claims on October 1, 1982 (the effective date of the FCIA) should be deter-

mined by the new Claims Court, which inherited the trial jurisdiction of the Court of Claims. *See Essex Electro,* 757 F.2d at 252; FCIA, P.L. 97–164, § 403(d), 96 Stat. 25, 58; *see also Ellis v. United States,* 711 F.2d 1571, 1574–75 (Fed.Cir. 1983). On August 5, 1985, five months after *Essex Electro* was decided on February 25, 1985, Congress, in the course of permanently reenacting certain portions of the EAJA which had expired, amended the EAJA to provide that "'court' includes the United States Claims Court." *See* P.L. 99–80, § 2(c)(2), *codified at* 28 U.S.C.A. § 2412(d)(2)(F). The legislative history of this amendment notes the intervening enactment of the FCIA and states that "[s]ince some question has been raised about the jurisdiction of the U.S. Claims Court to make [EAJA] awards … this amendment clarifies the jurisdictional issue, and codifies existing law." H.R.Rep. No. 99–120(I), 99th Cong., 1st Sess. 17–18, *reprinted in* 1985 U.S.Code Cong. & Admin.News 132, 146 (citing the Federal Circuit's *Ellis* decision). The extension of EAJA jurisdiction to the Claims Court thus appears to have been a particularized response to the transitional problems created by the FCIA. Congress's failure to make any similar clarifying amendment with regard to the Tax Court or the bankruptcy courts supports the continuing vitality of *Bowen.*

We note that at least two cases from other circuits have assumed without discussion that a bankruptcy court has jurisdiction to award EAJA fees. *See Matter of Esmond,* 752 F.2d 1106 (5th Cir.1985) (reversing bankruptcy court's denial on the merits of an EAJA applica-

not listed in section 451, and it is indisputable that, as presently constituted, they are not Article III courts. *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 60–61, 102 S.Ct. 2858, 2865–66, 73 L.Ed.2d 598 (1982) (plurality opinion of Brennan, J., joined by Marshall, Blackmun, and Stevens, JJ.); *id.* at 89, 102 S.Ct. at 2880 (Rehnquist, J., joined by O'Connor, J., concurring in the judgment); 28 U.S.C.A. § 152(a)(1) (West Supp. 1989) (appointment of bankruptcy judges by Courts of Appeals for 14–year terms). It thus appears that the bankruptcy court below lacked jurisdiction to award fees under the EAJA.

■ The jurisdictional provisions of the Bankruptcy Code nevertheless suggest two possible methods by which a bankruptcy court might validly entertain an EAJA application. The 1984 amendments to the Code responded to the constitutional problems created by the bankruptcy courts' non-Article III status [8] by distinguishing between "core" and "non-core" proceedings, the latter being proceedings outside the scope of bankruptcy law as such. *See* 28 U.S.C.A. § 157 (West Supp.1989). The assumption underlying the 1984 amendments is that Article III is not violated by the resolution of "core" bankruptcy proceedings in the non-Article III bankruptcy courts.[9] While the Trustee's underlying action in this case was a core proceeding, *see id.,* § 157(b)(2)(F), (O), his application for EAJA fees clearly is not. "If the proceeding does not involve a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because

tion and remanding case to bankruptcy court for possible award of EAJA fees); *In re Hagan,* 44 B.R. 59, 65 (Bkr.D.R.I.1984) (awarding EAJA fees). It appears that the jurisdictional issue was simply never raised in either of these cases. We also note that limiting EAJA jurisdiction under § 2412 to Article III courts is somewhat incongruous, given the fact that the administrative version of the EAJA, enacted at the same time as § 2412, *see* P.L. 96–481, § 203, 94 Stat. 2321, 2325–27 (1980), *codified at* 5 U.S.C.A. § 504 (West Supp.1989), authorizes fee awards by any "agency that conducts an adversary adjudication." 5 U.S.C.A. § 504(a)(1). This Court remains bound by the panel decision in *Bowen,* however, until and unless it is modified by the Supreme Court or by this Court sitting *en banc. See United States v. Machado,* 804 F.2d 1537, 1543 (11th Cir.1986).

**8.** The Supreme Court in *Northern Pipeline* struck down under Article III the 1978 Bankruptcy Code's grant of jurisdiction to the bankruptcy courts over all cases arising under, or related to cases arising under, the bankruptcy laws, at least insofar as the Code authorized the bankruptcy courts to adjudicate traditional state-law contract claims arising in relation to bankruptcy proceedings. *See* 458 U.S. at 70–76, 87 n. 40, 102 S.Ct. at 2871–74, 2880 n. 40 (plurality), 89–92 (concurrence).

**9.** That assumption is open to serious question. While Supreme Court dicta in two cases following *Northern Pipeline* seemed to take a narrow view of that decision, *see Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 584, 105 S.Ct. 3325, 3334, 87 L.Ed.2d 409 (1985); *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 851–53, 106 S.Ct. 3245, 3256–58, 92 L.Ed.2d 675 (1986), the Court's more recent

decision in *Granfinanciera, S.A. v. Nordberg,* —— U.S. ——, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), appeared to adopt the analysis of the *Northern Pipeline* plurality, and cast doubt on the constitutionality of the bankruptcy courts' authority, under § 157(b), to adjudicate certain "core" proceedings without the parties' consent. *Granfinanciera* held that a defendant who has not submitted a claim against a bankruptcy estate has a Seventh Amendment right to jury trial in a fraudulent-conveyance action brought by a trustee. The Court also strongly suggested—although it specifically avoided holding—that fraudulent-conveyance and voidable-preference actions under 11 U.S.C.A. §§ 547–548 are "private-right" claims which "must be tried under the auspices of an Article III court." 109 S.Ct. at 2796; *see generally id.* at 2794–98, 2802. The Courts of Appeals have generally held to the contrary. *See, e.g., In re Manville Forest Products Corp.,* 896 F.2d 1384 (2d Cir.1990); *In re Harbour,* 840 F.2d 1165, 1167–71 (4th Cir.1988), *vacated and remanded in light of Granfinanciera,* —— U.S. ——, 109 S.Ct. 3234, 106 L.Ed.2d 582 (1989); *In re Mankin,* 823 F.2d 1296, 1306–10 (9th Cir.1987), *cert. denied,* 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988); *In re Arnold Print Works, Inc.,* 815 F.2d 165, 169–71 (1st Cir.1987); *see also In re Committee of Unsecured Creditors of F S Communications Corp.,* 760 F.2d 1194, 1199 (11th Cir.1985) (upholding Emergency Rule promulgated to govern bankruptcy proceedings between *Northern Pipeline* and 1984 Bankruptcy Amendments, and holding that voidable-preference actions "involve[ ] federally-created rights" subject to non-Article III adjudication). This difficult issue is not raised in this case, and so, of course, we express no view as to its merits.

of its potential effect, but under section 157(c)(1) it is an 'otherwise related' or non-core proceeding." *Matter of Wood,* 825 F.2d 90, 97 (5th Cir.1987) (Wisdom, J.) (emphasis in original).

■ Section 157(c)(1), however, provides that

> [a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district court after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

Consideration of an EAJA application by a bankruptcy court under this procedure would not raise any problem under *Bowen* because the Article III district court, not the bankruptcy court, would ultimately determine the merits of the application and award the fees.[10] While FmHA attempts a rather strained argument that the bankruptcy and district court decisions below should be viewed as having followed the section 157(c)(1) procedure, it is clear that the proceedings below cannot be so charac-

terized. The bankruptcy court's September 23, 1988 judgment is by its own terms an "ORDER" and states that "it is hereby ORDERED that the Defendant [FmHA] shall pay to the Trustee [the awarded] fees." The district court's March 2, 1989 judgment is styled an "OPINION AND ORDER ON APPEAL," states that "the Bankruptcy Court entered an order on September 23, 1988 ... and this is an appeal by [FmHA] from that order," and concludes that "the appeal is denied." It is thus clear that the bankruptcy and district courts below were following the appeal procedure of 28 U.S.C.A. § 158 (West Supp. 1989).[11]

■ This brings us to the second potential method by which the bankruptcy court might have considered this EAJA application. Section 158 provides for appellate review by the district court of "final judgments, orders, and decrees" of the bankruptcy court, *id.,* § 158(a), "in the same manner as appeals in civil proceedings generally are taken to the courts of appeals," *id.,* § 158(c). *See In re Sublett,* 895 F.2d 1381, 1383–84 (11th Cir.1990). The bankruptcy courts are authorized to enter final judgments, subject to appellate review under section 158, in "core proceedings" under section 157(b) and under the consensual

---

**10.** Section 157(c)(1) is modeled after 28 U.S.C.A. § 636(b)(1) (West Supp.1989), which authorizes hearings and proceedings before federal magistrates subject to *de novo* review by the district court of the magistrate's proposed findings and recommendations. The Supreme Court upheld § 636(b)(1) against Article III challenge in *United States v. Raddatz,* 447 U.S. 667, 681–84, 100 S.Ct. 2406, 2415–17, 65 L.Ed.2d 424 (1980). *See also Jeffrey S. v. Georgia State Board of Education,* 896 F.2d 507, 512 (11th Cir.1990) (*de novo* review by Article III court essential to constitutionality of § 636(b)(1)).

**11.** While it might seem odd that FmHA, having raised the jurisdictional argument, would then contend that the proceedings below were nevertheless proper under § 157(c)(1), there is method to FmHA's madness. FmHA contends that because the bankruptcy court lacked jurisdiction to enter any final judgment, the district court was therefore obligated to conduct *de novo* review of the bankruptcy court's conclusions that FmHA's position was not substantially justified and that special circumstances did

not render an EAJA award unjust. FmHA argues that the district court in fact engaged in such review, and that its expressed opinions on those issues—opinions favorable to FmHA's position—constitute *de novo* findings reversing those of the bankruptcy court. Therefore, FmHA contends, it is the district court's opinionated dicta on those issues—not the bankruptcy court's findings based on the February 25, 1988 hearing—to which this Court owes deference under the applicable "abuse of discretion" standard of review. *See Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 2547, 101 L.Ed.2d 490 (1988). While this argument is somewhat ingenious, we find it unavailing. Regardless of whether the district court *should* have conducted *de novo* review of the bankruptcy court's findings, it simply did not do so. If, as FmHA contends, the bankruptcy court lacked jurisdiction to enter the. final judgment which it did— and which the district court affirmed in an application of traditional appellate review—our only recourse is to vacate the judgments below. We may not, as FmHA urges, engage in an implausible *post hoc* reconstruction of events.

referral provision of section 157(c)(2), which provides that "the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 [*i.e.*, a non-core proceeding] to a bankruptcy judge." The EAJA application in this case is unquestionably "related" to the underlying core proceeding. Because the very purpose of section 157(c)(2) is to authorize adjudication by the bankruptcy courts of proceedings otherwise reserved for Article III tribunals, it would appear that EAJA applications may properly be adjudicated by bankruptcy courts pursuant to that section.[12] In the present case, however, the crucial element of consent is lacking. The parties agree that at a pre-trial conference on August 25, 1983, FmHA consented to the bankruptcy court's jurisdiction over the underlying case on the merits. That consent clearly did not apply to the EAJA action, however, which was not actually commenced until January 1988

when the Trustee renewed his application.[13] Bankruptcy Rule 7012(b), effective as amended on August 1, 1987, provides that "[i]n non-core proceedings final orders and judgments shall not be entered on the bankruptcy judge's order except with the *express* consent of the parties." (Emphasis added.)

For the foregoing reasons, the bankruptcy court lacked jurisdiction to award EAJA fees in this case.

**B. *The Trustee's Eligibility Under the EAJA***

■ Because our holding on the jurisdictional issue would not preclude the Trustee from renewing his EAJA application before the district court, and because the district court has already faced and decided—albeit implicitly—the issue of the Trustee's eligibility to seek fees under the EAJA, it is appropriate for us to resolve that issue

**12.** We note that § 157(c)(2), as part of the Bankruptcy Amendments of 1984, was enacted subsequent to the EAJA and this Court's decision in *Bowen.* Thus, despite the jurisdictional limitation of the EAJA as construed by *Bowen,* we find it appropriate to construe § 157(c)(2) as providing an additional jurisdictional forum for EAJA applications (as it does for a wide range of bankruptcy-related proceedings otherwise reserved to Article III courts), predicated upon consent. Section 157(c)(2) is modeled after the consensual referral provision of the Federal Magistrates Act, 28 U.S.C.A. § 636(c) (West Supp.1989), which this Court upheld against Article III challenge in *Sinclair v. Wainwright,* 814 F.2d 1516, 1519 (11th Cir.1987). *Accord Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.,* 725 F.2d 537, 542–47 (9th Cir.) (*en banc*) (Kennedy, J.), *cert. denied,* 469 U.S. 824, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984); *see also Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 848, 106 S.Ct. 3245, 3255, 92 L.Ed.2d 675 (1986) ("as a personal right, Article III's guarantee of an impartial and independent federal adjudication is subject to waiver"). *But cf. Schor,* 478 U.S. at 850–51, 106 S.Ct. at 3256–57 (Article III also implies structural limitations which, in certain cases, may not be overcome by consent or waiver of the parties).

**13.** The transcript of the 1983 pre-trial conference is not contained in the record on appeal, but it is appended as an exhibit to the Trustee's brief before this Court. The record on appeal does contain FmHA's Answer to the Trustee's Amended Complaint, dated September 15, 1983, in which FmHA denied that it had consented to

the bankruptcy court's jurisdiction, while conceding that it "ha[d] conceded that [the bankruptcy] court has the requisite power to enter orders and to render final, appealable decisions in accordance with the Emergency Reference Rule." *Id.* at 3. In any event, counsel for FmHA conceded at oral argument before this Court that FmHA had consented to the bankruptcy court's jurisdiction over the underlying action on the merits. As we have already noted, that action was clearly a core proceeding under the Bankruptcy Code. At the time of the 1983 conference, the bankruptcy court was operating under the Emergency Rule promulgated by district courts nationwide during the interregnum between the Supreme Court's *Northern Pipeline* decision and Congress's response to that decision in the 1984 Bankruptcy Amendments. *See In re Committee of Unsecured Creditors of F S Communications Corp.,* 760 F.2d 1194, 1199–1201 (11th Cir.1985) (appending text of Emergency Rule). Under the Emergency Rule, as under § 157 enacted in 1984, consent of the parties was required for the bankruptcy court to enter judgment in "related" (*i.e.,* non-core) proceedings, but not in core proceedings "arising under" the Code. *See* Emergency Rule §§ (c)(1), (d)(3), 760 F.2d at 1199–1200. It appears from the transcript of the 1983 conference that FmHA conceded that the Trustee's action on the merits arose out of bankruptcy law and was not simply a "related" proceeding (and therefore did not require FmHA's consent), but that the bankruptcy court sought and received FmHA's consent to its jurisdiction so as to remove any doubt about its authority over the case.

now.[14] The EAJA defines a "party" eligible to seek attorney's fees as

> (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed[.]

28 U.S.C.A. § 2412(d)(2)(B). The Trustee argues that a bankruptcy estate fits within the meaning of the term "organization," and that, as the representative of the estate, he is entitled to seek fees under the EAJA. FmHA argues that a bankruptcy estate is not listed as an eligible party in the EAJA and cannot be shoe-horned into any of the other listed entities. We find surprisingly little guidance on this issue. No decision of this Court has addressed this issue, and few cases from any court even relate to it. One district court in this Circuit has declined to award EAJA fees to a bankruptcy estate, but only on the grounds that the litigation involved was not a "civil action" within the EAJA's meaning

and that special circumstances made an award of fees unjust. *See Flournoy v. Hershner*, 68 B.R. 165, 172–73 (M.D.Ga. 1986). The Fifth Circuit recently vacated and remanded an award of EAJA fees to a partnership, one of whose partners was in bankruptcy, in an action jointly brought by the partnership and the trustee of the bankrupt partner's estate; the court's vacatur and remand was not based on the identity of the parties and the court clearly contemplated that fees might be awarded on remand. *See In re Estate of Lee*, 812 F.2d 253, 256–57 (5th Cir.1987). Because the Fifth Circuit did not discuss the bankruptcy-trustee eligibility issue, however, and because the EAJA explicitly authorizes an award of fees to a "partnership," we find this case to be of little help to our analysis.[15]

The Trustee points to *Black's Law Dictionary*, which broadly defines an "organization" to include "a corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership or association, two or more persons having a joint or common interest, or any other legal or commercial entity." *Id.* at 991 (5th ed. 1979).[16] We believe, however,

**14.** There is no reason to believe that the district court would reach any conclusion on this issue of law different from that necessarily implied by its March 2, 1989 affirmance of the bankruptcy court's EAJA award. Because we review this issue of law de novo, no purpose would be served by awaiting the district court's reconsideration of it upon the Trustee's renewal of his application. On the other hand, because findings as to substantial justification and special circumstances under the EAJA—when made by a fee-awarding court with authority to do so— are subject only to deferential abuse of discretion review, *see* note 11, *supra*, the posture of this case precludes us from reaching those issues. Only the bankruptcy court—which we conclude lacked jurisdiction—has yet considered those issues in the first instance.

**15.** We find completely inapposite the case of *Hoffman v. Heckler*, 656 F.Supp. 1136 (E.D.Pa. 1987), cited by the Trustee. The court in that case awarded EAJA fees to the representative of the estate of a deceased person. The "estate" in that situation represented the posthumous interests of an individual who was indisputably eligible to seek EAJA fees. The court concluded, sensibly enough, that "[p]recluding attorneys from receiving attorney's fees if their clients died before the filing of attorney's fees motions

would discourage attorneys from representing sick people entitled to benefits." *Id.* at 1137. A bankruptcy estate is a completely different creature. The bankruptcy trustee does not represent the interests of the debtor alone; rather, he owes a complex set of obligations and fiduciary duties to the court, the debtor, the shareholders (in the case of a bankrupt corporation), and, most importantly, the creditors. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 354–55, 105 S.Ct. 1986, 1993–94, 85 L.Ed.2d 372 (1985); *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1342–43 (7th Cir.1987), *cert. denied*, 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988); *In re WHET, Inc.*, 750 F.2d 149 (1st Cir.1984); *In re Beck Industries, Inc.*, 725 F.2d 880, 888 (2d Cir. 1984).

**16.** We note that the Third Circuit specifically declined to rely on this definition from *Black's Law Dictionary* in holding that the EAJA did not authorize fee awards to local governmental bodies. *See Citizens Council of Delaware County v. Brinegar*, 741 F.2d 584, 590–91 (3d Cir.1984); *see also Commissioners of Highways v. United States*, 684 F.2d 443, 445 (7th Cir.1982). Congress responded to those decisions in its 1985 amendments to the EAJA by specifically adding

that the uncritical adoption of such a sweeping scope for the term "organization" would not be consistent with the principle that "waivers of sovereign immunity, as EAJA is, are to be construed narrowly and in favor of the sovereign." *City of Brunswick v. United States*, 849 F.2d 501, 503 n. 4 (11th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1313, 103 L.Ed.2d 582 (1989); *see also Library of Congress v. Shaw*, 478 U.S. 310, 321, 106 S.Ct. 2957, 2965, 92 L.Ed.2d 250 (1986) (an expression of "the clear affirmative intent of Congress" is required "to waive the sovereign's immunity"). We believe the conception of an "organization" as "a group of people that has a more or less constant membership, a body of officers, [and] a *purpose*," *see Webster's Third New International Dictionary* 1590 (1976) (emphasis added), more probably captures Congress's intent in drafting the EAJA, and comports more closely with a narrow construction of the EAJA's waiver of sovereign immunity.

We think it clear that a bankruptcy estate fits awkwardly, at best, within this conception. It is true, as the Trustee argues, that a bankruptcy trustee represents, in part, a group of creditors who share the common interest and purpose of recovering the maximum return on the debts owed to them. It is clear that the Trustee, in bringing the voidable-preference/equitable-subordination action against the FmHA in this case, was, generally speaking, " 'standing in the shoes' of the creditors." *See Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1343 (7th Cir. 1987), *cert. denied*, 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988). But the "organization" of creditors represented by a bankruptcy trustee in this sense is of a transient and limited nature. The "mem-

bers" of the "organization" do not in fact necessarily share any particular ties or links, other than that the debtor owes them all money. Even their abstract common purpose of recovering what is owed to them will often mask, in reality, a set of violently competing individual interests. Indeed, "representing self-interested creditors has long been recognized" as perhaps the most "difficult aspect" of the bankruptcy trustee's duties. *See id.* As the Supreme Court has observed, "historically one of the prime purposes of the bankruptcy law has been ... to protect the creditors from one another." *Young v. Higbee Co.*, 324 U.S. 204, 210, 65 S.Ct. 594, 597, 89 L.Ed. 890 (1945) (Black, J.); *see also Koch Refining*, 831 F.2d at 1343. This reality is reflected in this very case, where FmHA, the defendant in the Trustee's action, was itself one of Davis's key creditors, and where FmHA has been adjudged guilty of misleading and inequitable conduct toward the other creditors.[17]

The transient nature of such an "organization" is reflected in the fact that it did not even exist prior to Davis's bankruptcy filing, and thus did not exist during the time FmHA was engaging in the conduct which was the subject matter of the lawsuit for which attorney's fees are now sought. The bankruptcy estate and the creditors represented by the Trustee simply do not seem to be the kind of "organization" which the average, reasonable person would envision as falling under a narrow, common-sense definition of that term. We find the "organization" in this case to be a far cry, for example, in terms of "constant membership" and common "purpose," from the Indian tribe found eligible in *Hoopa Valley Tribe v. Watt*, 569 F.Supp. 943, 945 (N.D.Cal.1983).[18]

---

"unit[s] of local government" to § 2412(d)(2)(B). *See* P.L. 99–80, § 2(c)(1), 99 Stat. 183, 185. Because the eligibility of local governments under the EAJA raises somewhat unusual issues, we do not believe that it sheds much light on the question before us.

**17.** Needless to say, FmHA's previously adjudicated conduct in this case has absolutely no bearing on our resolution of the issues presently before us.

**18.** We note that one practical problem that would be created by the Trustee's extension of "organization" to include bankruptcy estates would be the difficulty of applying the EAJA's net-worth and number-of-employees limitations to the estate. *See* 28 U.S.C.A. § 2412(d)(2)(B)(ii). Even if we were inclined to accept the Trustee's expansive definition of "organization," we would certainly disagree with the bankruptcy court's holding that the Trustee satisfies the above limitations simply because

In construing the scope of the definition of an eligible "party" under EAJA, we are not insensible to the concerns which prompted Congress to enact that statute. As the Supreme Court recently noted, "Congress passed the EAJA in response to its concern that persons 'may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights.' " *Sullivan v. Hudson*, —— U.S. ——, 109 S.Ct. 2248, 2253, 104 L.Ed.2d 941 (1989). While the EAJA should thus be construed to vindicate its beneficial purposes, we believe that a definition of the term "organization" according to the conception discussed above appropriately balances those purposes with the principle requiring narrow construction of the EAJA as a waiver of sovereign immunity. Because a bankruptcy estate does not comfortably fit within that conception, we conclude that the Trustee is not an eligible "party" to bring an EAJA application.

## III. CONCLUSION

The bankruptcy court's award of fees under the EAJA was entered without jurisdiction. The judgments of the district and bankruptcy courts below are therefore VACATED. Furthermore, the Trustee may not renew his EAJA application in the district court because a bankruptcy trustee is not a "party" eligible to seek fees under the EAJA.

the bankruptcy estate itself is (not surprisingly!) insolvent. *See Davis*, 91 B.R. at 632. As we have already noted, the Trustee in this case represented the interests of the creditors; it is therefore the creditors, as the "real parties in interest," whose characteristics would be relevant for purposes of EAJA eligibility. *See American Ass'n of Retired Persons v. EEOC*, 873 F.2d 402, 404–05 (D.C.Cir.1989); *Unification Church v. INS*, 762 F.2d 1077, 1081 (D.C.Cir.1985); *see also* 1 C.F.R. § 315.104(g) (1989) (Model Rules for Implementation of [the administrative version of the EAJA, 5 U.S.C.A. § 504] in Agency Proceedings) ("An [EAJA] applicant that participates in a proceeding primarily on behalf of one or more persons or entities that would be ineligible is not itself eligible for an award."). The bankruptcy court correctly noted that "[t]he real party in interest is the party who will pay the attorney fees if the government does not." *Davis*, 91 B.R. at 632 (citing *Unification Church*, 762 F.2d at 1082). But while a bankruptcy trustee's attorney's fees, as a matter of form, are generally paid out of the estate, that simply reduces the ultimate pay-out to the creditors. Thus, it is the creditors, in fact, who ultimately pay if attorney's fees are not awarded. To view the bankruptcy estate *as such* as the "real party in interest" is to stretch a legal fiction beyond the point of reason; the estate itself is merely a locus of property or monetary value against which the creditors have claims. The parties appear to agree that a number of Davis's creditors in this case, such as the Ford Motor Credit Co., the General Motors Acceptance Corp., and the John Deere Credit Corp., would likely fail the EAJA's net-worth and number-of-employees standards. It is unclear how the EAJA eligibility of a bankruptcy trustee would be determined where some creditors satisfied those standards and others did not. One virtue of a holding excluding bankruptcy trustees from the scope of EAJA eligibility, however, is that it obviates such an inquiry.