In re TALISMAN MARINA, INC., Debtor(s).

Richard L. Thacker, Sherry R. Thacker, Richard L. Thacker, Jr., James H. Shonk, Mary B. Shonk, And Bay Pointe Associates, LLC, Plaintiffs,

v.

Talisman Marina, Inc., Harold L. Keathley, Kerry H. Keathley, Linda R. Keathley, Walter L. Wanvig, Donna J. Wanvig, Marina at Cape Haze, LLC, Washington Mutual Bank, FA, David L. Arp, and Cape Haze Marina Bay LLC, Defendants.

Bankruptcy No. 9:07–bk–08435–ALP. Adversary No. 9:07–ap–00493–ALP.

United States Bankruptcy Court, M.D. Florida, Fort Myers Division.

Feb. 15, 2008.

See also 385 B.R. 338, 2008 WL 850322.

Mark D. Hildreth, Ronald Louis Collier, Abel, Band, Russell, Collier, et al., Sarasota, FL, for Plaintiffs.

John F. Panzarella, Richard J. McIntyre, McIntyre Deese Baruch Panzarella et al., Temple Terrace, FL, Scott R. Lilly, Gray Robinson, P.A., Tampa, FL, Charles J. Bartlett, Sarasota, FL, Martin S. Awerbach, Michael A. Cohn, Michael A. Curry, Awerbach & Cohn PA, Clearwater, FL, Douglas B. Szabo, Henderson, Franklin, Starnes & Holt PA, Fort Myers, FL, for Defendants.

### ORDER GRANTING PLAINTIFFS' MOTION FOR ABSTENTION, MOTION FOR REMAND AND RULE 9027(e)(3) NOTICE (Doc. No. 28)

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTER under consideration is a Motion to Remand or for Abstention in the above-captioned Adversary Proceeding. The Motion is filed by the Plaintiffs who contend that this matter should be remanded back to the Circuit Court of the Twentieth Judicial Circuit in and for Charlotte County, Florida. This controversy involves a three-count First Amended Complaint which originated with a Complaint filed in the Charlotte County Circuit Court (Case No. 05–1732–CA)(State Court Action) on July 26, 2005. The lawsuit was brought by the Plaintiffs against Talisman Marina, Inc., (the Debtor); Harold L. Keathley, Kerry H. Keathley and Linda R. Keathley (the Keathleys); Walter L. Wanvig and Donna J. Wanvig (the Wanvigs); Marina at Cape Haze, L.L.C.; Washington Mutual Bank, FA; David L. Arp, and Cape Haze Marina Bay, LLC (collectively the Defendants).

In Count I of the First Amended Complaint, the Plaintiffs seek monetary damages, but have abandoned that claim. In the second Count (Count III—sic) the Plaintiffs seek the rescission or cancellation of certain deeds. In the third Count (Count IV—sic), the Plaintiffs seek a declaratory action determining the respective rights of the parties to use certain land in which the Debtor claimed to have an interest.

The current matter now presented is limited to the cancellation and rescission claim and declaratory relief claim by the Plaintiff.

### Historical Background of the Relevant Matters Pending Before this Court

On October 29, 1999, two corporations, Cape Haze Marina Village, Inc., and Cape Haze Trading Co. Inc., filed their Chapter 11 cases in this Court. The Chapter 11 cases were later converted to Chapter 7 cases on December 23, 1999. Diane Jensen, the Trustee in Cape Haze Marina Village, transferred certain properties and property rights to Talisman, the current Debtor. Talisman is owned 100 percent by the Defendant Harold Keathley. Kerry Keathley is the son of Harold and the only officer of the Debtor.

In the other Chapter 7 case of Cape Haze Trading Co. Inc., Shari Jansen was appointed as Trustee. Ms. Jansen sold certain assets to Pure Guava Trading Co. which was owned by Terry Keathley. Af-

ter these transactions, a suit was filed by Talisman who sued Pure Guava in the Twentieth Judicial Circuit Court in and for Charlotte County, Florida, Case No. 00–1756–CA. On or about December 19, 2001, the parties entered into a mediated settlement agreement (Settlement Agreement). On December 21, 2001, the Settlement Agreement was approved by the State Court.

The Settlement Agreement described Pure Guava as owning "all of the Lots not already sold to individual Unit Owners." The Agreement described Talisman as owning "all the Property described in the Plat except the Lots." Paragraph 13 of the Settlement Agreement granted "individual owners of residential Lots a right of first refusal for the rental or purchase of available boat slips in the Marina owned by Talisman."

The Settlement Agreement also provided, in paragraph 21, that "any benefits or burdens" contained in the agreement "shall run with the land and be binding on each Parties' heirs, successors and assigns" and that the agreement "shall be attached to the Final Judgment entered" in the litigation that was pending between the parties in the Circuit Court of Charlotte County, Florida.

### Talisman Winds Up its Business and Sells its Primary Assets

By the fall of 2002, Talisman was winding up its business affairs as it sold off its main asset, the marina facility referenced in the Settlement Agreement (See, Transcript of Section 341(a) Meeting of Creditors held on November 2, 2007—Testimony of Kerry Keathley, at p. 9, lines 5–9; pg. 13, lines 8–12). As referenced in paragraph 15.C. of Plaintiffs' First Amended Complaint and the Exhibits attached thereto, Talisman transferred a boat dock (known as Parcel 18) to its sole owner, Harold Keathley, on September 24, 2002.

This transfer was described by Talisman's president, Kerry Keathley, as a "distribution out of Talisman" to Harold Keathley (341 Transcript at p. 31, lines 2–13). On September 26, 2002, as referenced in paragraph 16 of the First Amended Complaint, Talisman also transferred to Cape Haze Marina Bay, LLC, property consisting of no less than 100 boat slips/boat docks in the marina owned by Talisman. According to Kerry Keathley, this transfer in September 2002 to Cape Haze Marina Bay, LLC, constituted the transfer of the main assets of Talisman (341 Transcript at p. 9. lines 5–9; p. 13, lines 8–12; p. 14, lines 10–17).

On October 4, 2002, Parcel 18 was transferred by Harold Keathley to his son and daughter-in-law, Kerry and Linda Keathley. The transfer was described by Kerry Keathley as a "gift" from Harold Keathley (341 Transcript at p. 31, lines 2–13). Parcel 18 was then sold to Walter and Donna Wanvig (the Wanvigs) on July 19, 2004 in connection with a sale by Kerry and Linda Keathley of their residence at the project (341 Transcript at p. 28, lines 22–25 and p. 29, lines 1–3). In connection with that transaction, the Wanvigs mortgaged the residence and the boat dock (Parcel 18) to Defendant Washington Mutual Bank, FA.

The last series of transactions that form the basis for the claims made by the Plaintiffs concerns transfers made in May 2005 by Cape Haze Marina Bay, LLC, the buyer of Talisman's primary assets in September 2002. Cape Haze Marina Bay, LLC, transferred multiple boat docks to Marina at Cape Haze, LLC, on May 27, 2005, and transferred one boat dock to Defendant David Arp on May 31, 2005. Finally, Plaintiff Bay Pointe Associates, LLC, acquired 30 residential units from Pure Guava Trading Company in October 2005.

## Parties and Claims in the Litigation

Plaintiffs Richard L. Thacker, Sherry R. Thacker and Richard L. Thacker, Jr., (the Thackers) and James H. Shonk and Mary B. Shonk (the Shonks) are "individual owners of residential units" (as that term was used in paragraph 13 of the Settlement Agreement) prior to the transfers of Parcel 18 and the transfers of the other boat slips/boat docks to Defendants David L. Arp, Cape Haze Marina Bay, LLC, and Marina at Cape Haze, LLC.

Bay Pointe Associates, as the purchaser from Pure Guava Trading Company, succeeded to the rights of Pure Guava under the Settlement Agreement insofar as acquiring the right to "market" condominium units at the project to future "individual owners of residential units" who would then be entitled, under the plain terms of paragraph 13 of the Settlement Agreement, to the right of first refusal to acquire a boat slip/boat dock.

In the second count of the First Amended Complaint, the Thackers, the Shonks and Bay Pointe Associates are seeking entry of a final judgment "canceling and rescinding the instrument" which purported to effect the transfers of various property on the grounds that all "of the parties to the instruments" were on notice of their rights of first refusal under the Settlement Agreement.

In the third count of the First Amended Complaint relief is sought by the Thackers and the Shonks against the Defendants: the Debtor, Harold Keathley, Kerry and Linda Keathley, and Walter and Donna Wanvig. The claim seeks a declaration to determine that the prior transfer should be cancelled and rescinded with respect to Parcel 18. Additionally, all the Plaintiffs seek declaratory relief against the Defendants: Cape Haze Marina Bay, LLC; David Arp; and Marina at Cape Haze, LLC.

The Debtor, the Keathleys (collectively) and the Wanvigs initially filed an answer and nineteen (19) affirmative defenses to the claims of the Plaintiffs. Neither the Debtor, the Keathleys nor the Wanvigs filed a counterclaim. By order entered April 24, 2007, the Circuit Court of Charlotte County, Florida, granted the motion of the Debtor, the Keathleys and the Wanvigs to seek leave to file amended affirmative defenses. In their Amended Affirmative Defenses, two additional affirmative defenses were filed, increasing the total to twenty-one (21). The Amended Affirmative Defenses also raised numerous issues regarding the implementation and the enforcement of the Settlement Agreement. The Defendants, Cape Haze Marina Bay, LLC, and David Arp filed their Amended Counterclaims against Bay Pointe and the other Plaintiffs. The Defendants and Cape Haze Marina, LLC, also filed amended third party claims against Pure Guava Trading, Terry Keathley and the owners of 23 lots at Cape Haze Marina Village.

The Amended Counterclaims and the Amended Third Party Claims filed by David Arp and Cape Haze Marina Bay, LLC, set forth five different causes of actions. The claim in Count I seeks declaratory judgment against the Plaintiffs and third party lot owners for a determination of the parties' rights under the Settlement Agreement concerning some certain co-called "transient docks." The claim in Count II is by Cape Haze Marina Bay, LLC, and is filed against Pure Guava, Terry Keathley and the third party lot owners and against all the Plaintiffs seeking damages based on *quantum meruit* or unjust enrichment.

The claim in Count III of the Amended Counterclaims and Amended Third Party Claims is by Cape Haze Marina Bay, LLC, against the Plaintiffs and Pure Guava and

Terry Keathley for tortious interference with business and contractual relationships.

Count IV is a claim filed by David Arp for tortious interference in business and contractual relationships against the Plaintiffs, Pure Guava and Terry Keathley.

Lastly, the claim in Count V of the Amended Counterclaims and Amended Third Party Claims is filed by Cape Haze Marina Bay, LLC, against the Plaintiffs, Pure Guava and Terry Keathley seeking an Order to: 1) enforce the Settlement Agreement; 2) enforce the order that was entered by the Circuit Court on December 21, 2001, approving the settlement, and 3) enforce the order entered by the State court on May 23, 2002, concerning the Settlement Agreement.

In September 2002, the Debtor transferred the property back to Harold Keathley who in turn transferred the property to his son Kerry and his wife Linda. In July 2004, Kerry and Linda Keathley sold their condo and the boat slip to the Wanvigs. The Wanvigs' purchase was financed through Washington Mutual Bank.

The Settlement Agreement referred to the ability of people who purchased the condominium unit in the project to get a boat slip right, referred to as a Right of First Refusal by the parties. Subsequent to the execution of the Settlement Agreement, there were various and sundry motions filed in the State Court Action to enforce the Settlement Agreement and interpret the terms of the agreement.

During this time, the Shonks and the Thackers each acquired a condominium unit in the project. Under their interpretation of the Settlement Agreement, they had a right of first refusal and would have a right to obtain a boat slip.

The initial Complaint in the State Court Action on July 26, 2005, involved a lawsuit filed by the Thackers and the Shonks as Plaintiffs against Talisman Marina, Harold Keathley, Kerry Keathley, Linda Keathley, the Wanvigs, the Marina at Cape Haze, LLC and Washington Mutual Bank, F.A. After working through several motions in the State Court Action, the Plaintiffs filed their First Amended Complaint against the same defendants. They added Bay Pointe Associates, LLC, as a new Plaintiff, and also added David L. Arp and Cape Haze Marina Bay, LLC, as Defendants.

This lawsuit also involved some counterclaims against the Plaintiffs by Cape Haze Marina Bay, LLC, and David Arp, as well as third party claims against Terry Keathley and Pure Guava Trading Co., Inc. Both the third party claims and the counterclaims involved the same ultimate issue concerning the correct interpretation of the Settlement Agreement and the determination of the Right of Refusal to purchase a boat slip.

In the State Court Action, the Defendants filed a motion for summary judgment which was denied by the Circuit Court. After extensive discovery was conducted, the lawsuit was initially removed on September 17, 2007, to the District Court for the Middle District of Florida, Ft. Myers Division. This was the same date a hearing in the Circuit Court was set to resolve issues raised concerning the disputed discovery. The issues included motions to compel discovery and seek sanctions against certain Defendants, in addition to Motions by various Defendants, except the Debtor, for protective order and sanctions. These Motions were filed earlier in 2007, but all were cancelled for hearing due to the intervention of the filing of the notice of removal by Talisman.

David Arp and Cape Haze Marina Bay filed their first Amended Counterclaim on August 29, 2007. In the Amended Coun-

terclaim, claims were brought against Bay Pointe, the Thackers and the Shonks. The Defendants also brought claims against Pure Guava Trading, Terry Keathley and 20–plus new Defendants including project residents who had purchased units. The counterclaim and third party Claimants are now claiming that they may have some interest in the right of first refusal.

That was the status of the pleadings in the State Court Action on or about August 29, 2007, just before the Chapter 11 was filed on September 14, 2007, and Talisman filed a removal notice with respect to this particular piece of litigation. In addition, Talisman also filed a Notice of Removal in another Adversary Proceeding (No. 07–513) of another State Court Action in Charlotte County Circuit Court in which Talisman sued Heartstone Developers, a litigation closely interwoven with this Adversary Proceeding. Talisman also filed a Motion to Remand and/or for Abstention in Adversary Proceeding Case No. 9:07–ap–00513–ALP.

### Timing of Motion to Abstain/Remand

Before considering the substance and the validity of the Plaintiffs' Motion seeking a remand or abstention of the foregoing litigation, it is necessary to consider the contention by the Debtor that the Motion was not filed timely.

As noted, Talisman sought a removal of the State Court Action to the District Court of the Middle District on September 17, 2007. It was not until October 23, 2007, that the cases were actually transferred to this Court by the entry of an order by the District Court. This odd turn of events triggered the first issue of whether or not the Motion for Abstention or Remand of the Thackers, Shonks and other Plaintiffs was timely filed.

It is the contention of the Defendants that the 20–day requirement to file a motion to abstain required by Local Rule 5011–2 began to toll on September 17, 2007, when the Notice of Removal was filed. They maintain that since the Motion to Abstain was not filed until December 3, 2007, (77 days later) it was not timely filed and should be denied outright. In response, the Plaintiffs contend that the 20 days should be calculated from the first time they received a notice of hearing from this Court on November 21, 2007, thus the Motion was timely.

The Amended Counterclaims and Amended Third Party Claims filed by Arp and Cape Haze Marina Bay against Pure Guava Trading and Terry Keathley also involve a request to interpret, enforce and declare the rights stemming from the old Settlement Agreement between Talisman and Pure Guava Trading. It is the contention of these Defendants that this Court clearly has no jurisdiction to consider a dispute between non-debtors. The resolution of their claim cannot have conceivably any relevance to the administration of the estate of Talisman, and therefore, this Court lacks subject matter jurisdiction to consider same. At the conclusion of the hearing on their contentions, this Court granted counsel representing Pure Guava and Terry Keathley's request to sever their third party claims. He joined in the Motion to Remand, but this matter shall not be discussed any further as the third party claim will be severed from the main case and remanded back to the State Court.

Prior to the removal of this Adversary Proceeding, significant activity occurred in the State Court Action as reflected by the Circuit Court docket printout (**Exhibit A**). These actions included motions for summary judgment filed by the Defendants which were denied, numerous depositions and hearings before a special master concerning discovery disputes. Hearings were scheduled for September 17, 2007

concerning a discovery dispute. They sought to compel discovery. Motions for contempt and sanctions against Harold Keathley were filed, and a motion for protective order was filed by Harold Keathley. The scheduled hearing was not held due to the intervention of the removal action from the Circuit Court to the District Court.

These are the relevant events that occurred prior to the removal and upon which the Plaintiffs seek an Order of Abstention or in the alternative a Motion for Remand of the removed action. In support of their motion, the Plaintiffs contend that this Court is required to abstain from hearing the removed action where:

1) timely motion for action is filed;

2) purely state law cause of action is asserted;

3) the proceeding is "related" to the case under title 11 but does not "arise under" or "arise in" of a case filed under title 11;

4) lack of independent federal jurisdiction absent the jurisdiction absent jurisdiction under § 1334;

5) a prepetition State Court Action is pending at the time of the bankruptcy case;

6) the action could be adjudicated timely in the State Court. *In re Harloff,* 236 B.R. 438 (Bankr.M.D.Fla.1998). *In re United Container, LLC,* 284 B.R. 162, 171 *E.S. Bankest v. Gen. Electric Co.,* (Bankr.S.D.Fla.2002).

The threshold question is, of course, whether or not the Plaintiffs' Motion to Remand was filed timely and in compliance with Local Rule 5011–2 of the Middle District of Florida Bankruptcy Rules which provides as follows:

A motion to abstain from a case or proceeding under either 11 U.S.C. 305 or 28 U.S.C. § 1334(c) shall be filed with the Clerk not later than the time set for filing a motion to withdraw the reference pursuant to Local Rule 5011–1 of these rules; provided, however, a motion to abstain from hearing a removed proceeding arising in, under or related to a case subject to the Order of General Reference (District Court Order 84–MISC–152) shall be timely if filed not later than 20 days following the filing of the notice of removal of the procedure pursuant to 28 U.S.C. § 1452.

■ In the present instance, it is without dispute that the Motion for Abstention was not filed until December 3, 2007 which was more than 70 days after the action had been removed and 40 days after District Court entered its order on October 23, 2007, transferring the case to this Court. It is clear from the Rule that motions for abstentions must be filed within 20 days from filing of the notice of removal. This Court is constrained to reject the excuse asserted by the Plaintiffs that their Motion was not due until they received notice of a pre-trial conference filed on November 21, 2007. Based on the foregoing, the Plaintiffs contend that the time period for filing a motion for abstention does not run from the day of filing the notice of removal, but rather from the date it is transferred to this Court. Assuming without admitting that such argument is correct, it is undisputed that the Plaintiffs still failed to timely file their Motion for Abstention because the Order transferring the matter from the District Court was entered on October 23, 2007. This should have placed the Plaintiffs on notice that the clock for filing the abstention motion had started to run. Notwithstanding, they failed to file their motion within 20 days from that date.

■ Assuming that this delay in filing the Motion is excusable and not fatal, this Court still must consider whether or not the removed case should be remanded pur-

suant to the mandatory abstention provisions of 28 U.S.C. § 1334(c)(2). In support of the motion, the Plaintiffs contend that the State Court Action is purely based on state law and arises from a Settlement Agreement that was entered into in connection with a State Court Action. Linked to the State Court Action are a plethora of counterclaims and third party claims of certain non-debtor defendants who are seeking the State Court's assistance in interpreting and enforcing the Settlement Agreement. This record leaves no doubt that the removed action was filed in the Circuit Court in and for Charlotte County, Florida, and was still pending at the time Talisman filed its Petition for Relief under Chapter 11 in this Court.

█ The Plaintiffs contend that contrary to the assertion of the Defendants, the matter is not "core." The term "core proceedings" in 28 U.S.C. § 157 was meant to include those proceedings that would not exist at law in the absence of a Bankruptcy Court, i.e. the type of proceedings that spring from the operation and application of the Bankruptcy Code, and would not have an existence outside a bankruptcy case. *In re Davis*, 899 F.2d 1136, 1140–41 (11th Cir.1990). According to the Plaintiffs, the Debtor did not file a counterclaim or third party claim, nor did the other co-defendants in the State Court Action. At best, the State Court Action may qualify as a matter "related" to the Debtor's case. There is no factual or legal case that is a "core" proceeding. However, it is beyond peradventure that a case cannot be brought in federal court absent federal jurisdiction.

█ Disregarding the question of timeliness of the Motion, the mandatory abstention would depend on the application of the factors outlined earlier. One of these requirements for a mandatory abstention is "whether allowing an action to proceed in a State Court will have an unfavorable affect on the administration of the bankruptcy case." In determining this issue, the Court will consider:

1) the backlog of the state court and federal court calendars;

2) the status of the proceeding in a state court prior to removal particularly whether or not discovery has commenced;

3) the status of the bankruptcy case;

4) the complexity of the issues to be resolved;

5) whether parties consent to bankruptcy court entering judgment in a non-core case;

6) a jury demand has been made; and

7) whether the underlying bankruptcy case is a reorganization or liquidation case.

In the present instance, the Plaintiffs have not consented to the Bankruptcy Court entering a final dispositive order or a judgment. Counsel for the Debtor, as well as the Debtor's president Kerry Keathley have represented in court that the Debtor is out of business, has not engaged in business for a substantial period of time, and filed a Chapter 11 case simply to achieve liquidation of whatever assets the Debtor might have in "winding-up" the Debtor's business affairs. While there is no doubt that under the current version of the Code, liquidation of all assets is proper under the aegis of Chapter 11 if the proceeds and benefits will be greater than it would be in a Chapter 7 liquidation case. Notwithstanding that it is a liquidation case; there would be no impact or effect of the instant litigation on the outcome of the Chapter 11 case.

As noted earlier, the Plaintiffs also seek remand, i.e. an abstention under 28 U.S.C. § 1334(c)(1), the optional abstention provision. Bankruptcy Courts consider twelve

**338**

non-exclusive factors to determine whether permissive abstention is appropriate. *In re Sun Healthcare Group,* 267 B.R. 673, 678–79 (Bankr.D.Del.2000); *Geruschat, et al. v. Ernst & Young, LLP (In re Earned Capital Corp.),* 331 B.R. 208, 220 (Bankr. W.D.Pa.2005) *citing Matter of Chicago, Milwaukee, St. Paul & Pacific Railroad Co.,* 6 F.3d 1184, 1189 (7th Cir.1993).

▮ One of the twelve factors determining whether abstention is appropriate is the effect it will have on the efficient administration of the estate. In this case, remanding the action to State Court will not impede the efficiency of the estate as this case is a liquidation case and the property rights that are the subject of this litigation are the only assets of value to be liquidated. The extent to which state law predominates over bankruptcy issues is another consideration. The underlying property dispute rooted in state law is the central focus of this litigation, overshadowing any tenuous connections to the bankruptcy issues. Another factor is the presence of a related proceeding in a state court forum, which clearly exists in the present case. In light of considering several factors, abstention is appropriate.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Abstention, Motion for Remand and Rule 9027(e)(3) Notice (Doc. No. 28) be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED that the above-captioned Adversary Proceeding be, and the same is hereby, remanded to the Circuit Court of the Twentieth Judicial Circuit in and for Charlotte County, Florida.