RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0266p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RUDOLPH BETANCOURT,

                 *Plaintiff-Appellant*,

    *v.*

INDIAN HILLS PLAZA LLC, a Michigan Limited
Liability Company,

                 *Defendant-Appellee*.

No. 23-1316

Appeal from the United States District Court for the Eastern District of Michigan at Bay City.
No. 1:21-cv-10436—Thomas L. Ludington, District Judge.

Decided and Filed:  December 5, 2023

Before:  BOGGS, SUHRHEINRICH, and READLER, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Brandon A. Rotbart, LAW OFFICE OF BRANDON A. ROTBART, P.A., Miami, Florida, for Appellant.  Jonathan E. Lauderbach, Matthew E. Sierawski, Katherine G. Boothroyd, WARNER NORCROSS + JUDD LLP, Midland, Michigan, for Appellee.

_____

## OPINION

_____

CHAD A. READLER, Circuit Judge.  Rudolph Betancourt's disability made it difficult for him to access a shopping plaza.  Invoking the Americans with Disabilities Act, Betancourt filed suit against the plaza's owner.  The owner admitted fault as to some alleged violations and undertook remedial efforts.  Later, the district court entered a final judgment directing the owner to correct the remaining violations.  The court also awarded Betancourt $12,000 in attorney's

fees and costs.  Betancourt, however, believes he is entitled to more fees and costs.  Finding no abuse of discretion by the district court, we affirm.

I.

With the lone issue on appeal a challenge to the district court's award of attorney's fees and costs, a brief recounting of the facts will suffice.  Betancourt is disabled and uses a wheelchair to aid his mobility.  He encountered impediments to accessing the Indian Hills Plaza, a shopping center owned and operated by defendant Indian Hills Plaza LLC.  So he filed suit under the Americans with Disabilities Act, codified at 42 U.S.C. §§ 12101 *et seq.*, and Michigan's Persons with Disabilities Civil Rights Act, Mich. Comp. Laws §§ 37.1101 *et seq.*

Indian Hills answered, and the parties began discovery.  After experts inspected the shopping center, the parties agreed that Indian Hills violated the ADA in 17 respects.  The district court granted summary judgment to Betancourt as to those violations and stayed the case to allow Indian Hills to continue voluntary remediation.

Betancourt eventually dropped his remaining claims and sought a final judgment, which included a request for $66,602.50 in attorney's fees and costs.  Of that total, $46,282.50 reflected attorney's fees, and $20,320 were costs.

Agreeing that Betancourt was entitled to some amount of fees and costs, the district court nonetheless disagreed with significant aspects of Betancourt's calculations.  Start with his request for $46,282.50 in attorney's fees.  Betancourt calculated that figure by using an hourly attorney fee of $425 and a total of 118.3 hours.  The court believed that an hourly rate of $150 was more appropriate.  The court then reduced the number of hours worked by 20 percent due to what it believed was excessive billing.  And it lowered the attorney's fees award further, from $14,196 to $10,000, based on various deficiencies in the actions by Betancourt's counsel during the litigation.  The district court then turned to the issue of costs.  It viewed Betancourt's request for $20,320 as unreasonable.  First, the court rejected counsel's travel costs, deeming them avoidable.  And then the court faulted counsel's expert for generating "unnecessary and duplicative" fees, and therefore reduced the expert costs from $7,500 to $2,000.  Adding in the $10,000 in attorney's fees, the fees and costs awarded totaled $12,000.

II.

On appeal, Betancourt challenges his reduced attorney's fees and costs award. To set the stage, it is worth reminding that a "hallmark of the American judicial system is the practice of parties to a lawsuit bearing their own attorney's fees and costs. In some settings, however, Congress has altered that traditional practice by statute." *Echols v. Express Auto, Inc.*, 857 F. App'x 224, 226 (6th Cir. 2021) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)). One such example is the ADA. The statute instructs that a district court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. Because this authorization mirrors the attorney's fees provision of the Civil Rights Attorney's Fees Award Act, codified at 42 U.S.C. § 1988(b), we routinely borrow from that body of case law in reviewing awards under the ADA, *see Hensley*, 461 U.S. at 433 n.7.

In seeking an award of attorney's fees, the prevailing party bears the burden of proving that the amount sought is reasonable. *Id.* at 433–34, 437. To evaluate when the moving party has done so, a district court calculates a baseline "lodestar" amount. *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986). The lodestar calculation turns on two inputs. The first is the number of hours worked, which equates to those hours the prevailing attorneys "reasonably expended." *Id.* The second is a reasonable hourly rate, which derives from the "prevailing market rates" in the relevant community. *Id.*; *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Multiplying the two metrics together—hours x hourly rate—creates the lodestar amount.

From there, the district court may adjust the figure based on "relevant considerations peculiar to the subject litigation." *Adcock-Ladd*, 227 F.3d at 349. The 12 factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), guide that assessment. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). They include the time and labor required by the case; the novelty and difficulty of the questions presented; the skill needed to perform the legal service properly; and the experience, reputation, and ability of the attorneys. *Id.* at 471 n.3.

In reaching its final disposition, the district court is expected to provide "a concise but clear explanation of its reasons for the fee award," *Hensley*, 461 U.S. at 437, explaining "which of the claimed hours the court is rejecting, which it is accepting, and why," *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997) (citation omitted). When the district court does so, as it did here, we afford it "substantial deference." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013). And in that case, we will not reverse the award absent an abuse of discretion, *Equal Emp. Opportunity Comm'n v. Dolgencorp, LLC*, 899 F.3d 428, 436 (6th Cir. 2018), requiring a "definite and firm conviction that the trial court committed a clear error of judgment" for reversal, *Ne. Ohio Coal. for Homeless v. Sec'y of Ohio*, 695 F.3d 563, 569 (6th Cir. 2012).

We see no abuse of discretion in the district court's fees and costs award. In a detailed written opinion, the district court began by laying out the correct legal standard for calculating attorney's fees. The court then calculated the lodestar amount, first by determining the appropriate rate, then by assessing the number of hours "reasonably expended." Beginning with the hourly rate, the court identified the prevailing rates in the jurisdiction and explained that the quality of the performance of Betancourt's attorney was below average, necessitating a lower rate. Turning next to the number of hours, the court found that Betancourt's attorney had filed unnecessary motions and caused unnecessary litigation that inflated his hours, warranting a 20-percent reduction. Finally, looking to the *Johnson* factors, the district court reduced the amount further—citing specific instances of Betancourt's attorney's inadequacies, from boilerplate filings with typos to "references to property not even at issue." The court also noted the case's lack of complexity.

The district court then reviewed the expert costs requested, finding them unreasonable. Examining fee awards for the same expert in other cases, the district court identified some of the expert-related fees here as "unnecessary and duplicative." It also questioned the decision to hire an expert from Florida and then fly him to Michigan twice to inspect the same property. In the end, the court deemed $2,000—not the $7,500 originally requested—an appropriate costs award. All things considered, we see no abuse of discretion in the district court's assessment.

Betancourt disagrees, focusing largely on the reduction in his attorney's fees award. Any excess fees, he says, are due to Indian Hills' litigation tactics, which he believes caused him to rack up increased legal bills. The district court did not see things that way. According to the district court, Betancourt's premature fee motions, not Indian Hills' opposition to those motions, caused the exorbitant fees. We have no reason to dispute that factual finding. *See Roberts v. Neace*, 65 F.4th 280, 286 (6th Cir. 2023) ("[T]hese 'essentially are factual matters' that implicate the district court's expertise, its ring-side seat in watching the case unfold, and its 'superior understanding of the litigation.'" (quoting *Hensley*, 461 U.S. at 437)).

Next, Betancourt questions the hourly rate used to calculate the lodestar amount. To his mind, the district court should have used the rates for civil rights attorneys, not public benefits attorneys. True, the ADA is a civil rights statute. But equally true, Betancourt provided no evidence supporting his requested rate of $425, leaving the district court to pick a rate from scratch. *See Hensley*, 461 U.S. at 437 (noting the fee applicant bears the burden of establishing the appropriate hours and rates). Nor, in any event, was the district court required to pick a rate based on the type of case. The court's charge was to select a "rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Waldo*, 726 F.3d at 821 (citation omitted). And Betancourt's counsel's skill, to the district court's eye, left something to be desired. Perhaps demonstrating the point is Betancourt's reliance here on fee awards in other ADA cases, without explaining, in this fact-intensive setting, how those cases are analogous. Different factual scenarios, of course, may lead to different results. Attorney's fees cases are no exception.

Nor do we see merit in Betancourt's assertion that he needed to move early in the litigation for an award of fees and costs, leading to what the district court deemed to be premature, repeated, and unnecessary filings, resulting in inflated fees. Betancourt seems to believe he had to seek his fees and costs before the litigation's end or risk losing his entitlement to those amounts. To be sure, when a defendant in an ADA case voluntarily and promptly remedies purported ADA-related shortfalls, those actions may foreclose the plaintiff's ability to claim victory in the litigation for purposes of a fees award. *Cf. Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 604–06 (2001) (discussing

voluntary remediation). But at day's end, the dispositive question is whether Betancourt is a prevailing party. He is. And the answer turns on the case's ultimate resolution, not on the timing of Betancourt's fees motion. *Cf. id.* at 605 (holding that a party becomes a prevailing party once there is a "judicially sanctioned change in the legal relationship of the parties"). So we do not see an abuse of discretion in the district court's belief that Betancourt's rash filings should not be included in the ultimate fee calculations.

Betancourt, we note, does identify one error in the proceedings. Yet it is not one that alters our conclusion. While criticizing Betancourt for hiring an expert from Florida, the district court erroneously stated that Indian Hills hired an expert from Michigan when, in reality, the expert was from Minnesota. Where in the Midwest the defense expert calls home, however, does not change the fact that Betancourt hired an expert from roughly 1,500 miles away, which the district court viewed as leading to inflated costs. Nor, in any event, does it change our conclusion that, on balance, no abuse of discretion occurred here.

Betancourt's remaining arguments fare no better. He laments the adequacy of Indian Hills' answer, attempts to relitigate discovery disputes, and bemoans the pace of the remediations. These may be valid concerns, but they do not bear on the narrow issue of attorney's fees and costs. If anything, they would be fare for a sanctions motion (which, we note, has already been denied), or a contempt motion (which is pending).

\*     \*     \*     \*     \*

For the reasons above, we AFFIRM the district court's order.