RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0003p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

IN RE: MEGAN MARIE TETER,

*Debtor.*

─────────────────────────────────────────────

MEGAN MARIE TETER,

*Appellant,*

*v.*

RICHARD A. BAUMGART, Chapter 7 Trustee,

UNITED STATES TRUSTEE,

*Appellee.*

No. 22-3778

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland;
No. 1:21-cv-00334—Bridget Meehan Brennan, District Judge.

United States Bankruptcy Court for the Northern District of Ohio at Cleveland;
No. 1:19-bk-11224—Arthur I. Harris, Bankruptcy Judge.

Argued:  June 13, 2023

Decided and Filed:  January 3, 2024

Before:  GILMAN, BUSH, and READLER, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Susan M. Gray, SUSAN M. GRAY LAW, Rocky River, Ohio, for Appellant. Jeffrey E. Sandberg, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Susan M. Gray, SUSAN M. GRAY LAW, Rocky River, Ohio, for Appellant.  Jeffrey E. Sandberg, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

**OPINION**

---

CHAD A. READLER, Circuit Judge.  Megan Teter was nearly $100,000 in debt when she declared bankruptcy.  Believing that Teter was abusing the bankruptcy system, the United States Trustee intervened and filed a motion to dismiss the case.  The Trustee later withdrew his motion, and the bankruptcy court discharged Teter's debt without objection.  Teter then sought attorneys' fees from the Trustee through the Equal Access to Justice Act.  The bankruptcy court denied her request.  On appeal, the district court agreed and affirmed the bankruptcy court.  We now do the same.

I.

Staring down $96,538.05 in debt, Megan Teter filed for Chapter 7 bankruptcy.  Over half of her total debt reflected unpaid student loans.  The Bankruptcy Abuse Prevention and Consumer Protection Act, passed in 2005, restricts an individual's ability to discharge consumer debts if the debtor's income exceeds certain thresholds.  *See* 11 U.S.C. § 707; *Schultz v. United States*, 529 F.3d 343, 346–47 (6th Cir. 2008).  In her Chapter 7 filing, Teter described her unpaid loans as "business debts," meaning they were "not primarily consumer debts."  The United States Trustee disagreed.  Reviewing Teter's petition in accordance with statutory requirements, the Trustee concluded that Teter's loans were better characterized as "consumer debt."  *See* 11 U.S.C. § 704(b) (explaining the duties of a trustee).  And after evaluating Teter's monthly income, the Trustee came to the view that Teter was abusing the system and thus filed a motion to dismiss her bankruptcy petition.  *See id*. § 707(b) (allowing a bankruptcy court to dismiss, on the Trustee's motion, a case "filed by an individual debtor . . . whose debts are primarily consumer debts" if granting relief under Chapter 7 would be an abuse of the chapter).

Teter contested the Trustee's position through a motion for summary judgment.  The bankruptcy court initially declined to grant Teter's motion, believing that more record development was warranted.  Teter reiterated her request, citing a desire to have her case resolved quickly in light of family circumstances.  Before the bankruptcy court took any further

action, the Trustee withdrew his motion, explaining that he had "become aware of certain facts and circumstances which render the Motion unwarranted."

Claiming victory, Teter sought attorneys' fees from the Trustee under the Equal Access to Justice Act, or EAJA. *See* 94 Stat. 2321, 2325 (1980); 28 U.S.C. § 2412. The bankruptcy court, however, declined to award them. Teter appealed that decision to the district court, which, following its review, affirmed the bankruptcy court. The case is now before us following Teter's timely notice of appeal.

## II.

Today's case involves a request for attorneys' fees under the EAJA during a bankruptcy proceeding. The EAJA empowers "a court" to award prevailing parties fees and costs incurred "in any civil action" that is "brought by or against the United States in any court having jurisdiction of that action." 28 U.S.C. § 2412(d)(1)(A). By way of background, in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) (plurality op.), the Supreme Court struck down parts of the then-existing bankruptcy system. Congress responded by erecting the system that remains in place today. *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669–71 (2015) (discussing historical amendments to the bankruptcy system). In this modern regime, bankruptcy courts are officers of the district courts, meaning the former can adjudicate certain cases that are referred to those courts. *Id.* at 670. When that happens, the bankruptcy court's "statutory authority depends on whether Congress has classified the matter as a 'core proceeding' or a 'non-core proceeding.'" *Id.* (alterations adopted) (quoting 28 U.S.C. §§ 157(b)(2), (b)(4)). A core proceeding is "one that either invokes a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy." *In re Bavelis*, 773 F.3d 148, 156 (6th Cir. 2014) (cleaned up). Congress has provided a non-exhaustive list of examples. *See* 28 U.S.C. § 157(b)(2). Non-core proceedings, conversely, include causes of action that (1) are not identified in § 157(b)(2), (2) existed before the filing of the bankruptcy case, (3) would exist independent of the Bankruptcy Code, or (4) are not significantly affected by the filing of the bankruptcy petition. *Bavelis*, 773 F.3d at 156. For core proceedings, "Congress gave bankruptcy courts the power to 'hear and determine' core proceedings and to 'enter appropriate orders and judgments,' subject to appellate review by the

district court." *Wellness Int'l*, 575 U.S. at 670 (citing 28 U.S.C. § 157(b)). For non-core proceedings, on the other hand, a bankruptcy court enjoys authority over the matter only to the extent that the parties consent to the court's jurisdiction. *Id.* at 671 (citing 28 U.S.C. § 157(c)(2)).

How do attorneys' fees requests under the EAJA fare in this dichotomy? The federal courts are not of one mind. Some describe EAJA fees requests as core proceedings, while others treat them as non-core proceedings. *Compare* Dist. Ct. Op., R.12, PageID#315 ("Other courts have held that a fee motion related to and arising from a core proceeding is itself considered a core proceeding." (citing *In re Mendez*, No. 7-07-11092 SA, 2008 WL 5157922, at *5 n.1 (Bankr. D.N.M. Sept. 26, 2008), and *In re Chambers*, 140 B.R. 233, 238 (N.D. Ill. 1992))), *with In re Davis*, 899 F.2d 1136, 1140 (11th Cir. 1990) ("While the Trustee's underlying action in this case was a core proceeding, his application for EAJA fees clearly is not." (internal citation omitted)). Were we to agree with those courts that treat the issue as a core proceeding, the bankruptcy court fairly asserted jurisdiction. *Wellness Int'l*, 575 U.S. at 670; 28 U.S.C. § 157(b). But we would say the same in this instance even if we were to treat the matter as a non-core proceeding.

That is because no party objected to the bankruptcy court's jurisdiction. Teter consented to the bankruptcy court's adjudication of her fees request by filing her motion with that court. In response, the Trustee has never argued that the bankruptcy court lacked jurisdiction to assess such fees. True, parties ordinarily cannot waive federal jurisdictional defects. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). But things work slightly differently in bankruptcy court. *See Wellness Int'l*, 575 U.S. at 683–84. For non-core proceedings, again, bankruptcy courts have jurisdiction only where the parties have so consented. But "[n]othing in the Constitution requires that consent to adjudication by a bankruptcy court be express." *Id.* at 683. And by continuing to litigate Teter's EAJA request without objection, the Trustee in effect consented to the bankruptcy court's handling of the matter, making it a valid exercise of that court's jurisdiction.

With the bankruptcy court's jurisdiction being sound, so too was the district court's. The district court had appellate jurisdiction over "final judgments, orders, and decrees" of the bankruptcy court under 28 U.S.C. § 158(a). That includes all orders that "finally dispose of

discrete disputes within the larger case." *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 657 n.3 (2006) (emphasis omitted). Denying a party's request for fees does just that. We, in turn, have appellate jurisdiction over the district court's appellate judgments under 28 U.S.C. § 158(d).

III.

A. That takes us to the merits of Teter's claim for attorneys' fees. As a background principle, we note that a "hallmark of the American judicial system is the practice of parties to a lawsuit bearing their own attorney's fees and costs." *Betancourt v. Indian Hills Plaza LLC*, 87 F.4th 828, 830 (6th Cir. 2023) (citation omitted). Congress, however, may alter "that traditional practice by statute." *Id.* It did so in the EAJA. There, Congress authorized federal courts to award prevailing parties fees and costs incurred "in any civil action" that is "brought by or against the United States in any court having jurisdiction of that action." 28 U.S.C. § 2412(d)(1)(A).

Among other things, then, as a threshold to recovering fees, Teter must demonstrate that the Trustee's motion to dismiss in the bankruptcy court unambiguously constituted a "civil action" under the EAJA. The bankruptcy court held that it did not, as did the district court. Noting that harmony, it nonetheless remains the case that in bankruptcy appeals, we "directly review the bankruptcy court's decision." *In re Purdy*, 870 F.3d 436, 442 (6th Cir. 2017) (citation omitted). We do so by examining its factual findings under the clear error standard and its legal conclusions de novo. *Id.*

Our inquiry here is limited. At Teter's direction, we examine whether the EAJA's "civil action" requirement has been satisfied in a very specific context: a motion to dismiss a bankruptcy case filed by the United States Trustee in accordance with 11 U.S.C. § 707(b). Whether, for example, a bankruptcy case itself constitutes a civil action for purposes of the EAJA is not a point pressed by Teter. *Cf. In re Sisk*, 973 F.3d 945, 947 (9th Cir. 2020) ("[U]ncontested bankruptcy cases do not clearly constitute civil action[s] brought by or against the United States within the meaning of the EAJA." (citation and quotation marks omitted)).

Our analysis is informed by principles of sovereign immunity. In "render[ing] the United States liable for attorney's fees for which it would not otherwise be liable," the EAJA "amounts to a partial waiver of sovereign immunity." *Ardestani v. INS*, 502 U.S. 129, 137 (1991). Although the EAJA waives sovereign immunity in some respects, such waivers "must be strictly construed in favor of the United States." *Id.* To honor that understanding, we read any textual ambiguity in favor of immunity, because "the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires." *FAA v. Cooper*, 566 U.S. 284, 290 (2012). And, in the end, we agree with the bankruptcy court that the EAJA could be read to exclude § 707(b) motions to dismiss, leaving fees unavailable to a party like Teter.

One such reading turns on a straightforward understanding of the Federal Rules of Civil Procedure. Since their promulgation in 1937, there has been "one form of action—the civil action." Fed. R. Civ. P. 2. In the realm of federal civil litigation, enactment of Federal Rule of Civil Procedure 2 was a watershed event. It marked an "abolition of forms of action and procedural distinctions" in favor of "a single action and mode of procedure." Fed. R. Civ. P. 2 advisory committee's note 3 to 1937 adoption. Today, "[a] civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3. And once commenced, the case proceeds according to the guiding hand of the Federal Rules of Civil Procedure. *See, e.g.*, Fed. R. Civ. P. 8 (general pleading rules); Fed. R. Civ. P. 26 (discovery proceedings); Fed. R. Civ. P. 38 (procedures for demanding a jury trial).

The edition of Black's Law Dictionary in print when the EAJA was enacted is in accord with this contemporary understanding of a civil action. *Civil Action*, Black's Law Dictionary (5th ed. 1979) (noting that civil actions encompass the old categories of actions at law and suits in equity). By and large, it defines a "civil action" as an "[a]ction brought to enforce, redress, or protect private rights," which generally includes "all types of actions other than criminal proceedings." *Id.* This definition is perhaps capacious. But "action" is a generous term; its "usual legal sense means a suit brought in a court; a formal complaint within the jurisdiction of a court of law." *Action*, Black's Law Dictionary (5th ed. 1979). And with respect to a federal civil action in particular, the manner of "action" at issue here, Black's understanding parrots that of Federal Rule of Civil Procedure 3: "a civil action is commenced by filing a complaint with the

court." *Bring Suit*, Black's Law Dictionary (5th ed. 1979); *see also* Fed. R. Civ. P. 3. Other entries of this nature are to the same effect. *See, e.g.*, *Controversy*, Black's Law Dictionary (5th ed. 1979) ("adversary proceeding in a court of law; a civil action or suit"); *Plaintiff*, Black's Law Dictionary (5th ed. 1979) ("the party who complains or sues in a personal action and is so named on the record"). All share the understanding that the invocation of a civil action turns on the filing of a complaint. As neither Teeter nor the Trustee filed a complaint, it is difficult to believe that this proceeding is the kind to which the EAJA applies.

Seeing things otherwise, Teter contends that a motion to dismiss should be treated as a civil action. For Teter to overcome the shield of sovereign immunity, however, she must show that Congress unambiguously intended to allow bankruptcy petitioners to recover attorneys' fees under the EAJA after successfully defending against the Trustee's motion to dismiss. *See Cooper*, 566 U.S. at 290. She has not done so, in light of the above.

And truth be told, Teter's interpretation of the EAJA is the less convincing one. After all, if she is correct that a motion to dismiss amounts to a separate civil action, a party in the district court could claim entitlement to EAJA fees for doing no more than simply defeating a Rule 12(b)(6) motion. That understanding is not only at odds with Rules 2 and 3, but is also in tension with the understanding that the "EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole rather than as atomized line-items." *See Comm'r v. Jean*, 496 U.S. 154, 161–62 (1990) ("Any given civil action can have numerous phases."). To that end, Teter has not offered any examples of a federal court explicitly stating that a motion to dismiss (of any kind) is its own civil action. Nor would we anticipate as much. Motions to dismiss are widely perceived as tools to resolve, in whole or in part, the civil actions of which they are a part. *See, e.g.*, *Banister v. Davis*, 140 S. Ct. 1698, 1715 (2020) (Alito, J., dissenting) (describing motions to dismiss as part of the "civil action procedural sequencing"). Think of its filing as tantamount to an act in a play, be it a one-act production, should the motion succeed, or a longer running performance, should it not.

We see no reason why motions to dismiss in bankruptcy proceedings buck this general understanding. Teter notes two cases that seem to assume the EAJA applies in bankruptcy court when a debtor prevails over a trustee's motion to dismiss. *See In re Terrill*, No. 05-87180-BJH-

7, 2006 WL 2385236 (Bankr. N.D. Tex. July 27, 2006) (assuming, without explaining, that EAJA fees are available in a bankruptcy case after defeating a § 707(b) motion and receiving a discharge); *In re Mendez*, No. 7-07-11092, 2008 WL 5157922 (Bankr. D.N.M. Sept. 26, 2008) (same). But those cases offer no analysis on the point. Attempting to fill in the gaps, Teter directs us to Bankruptcy Rule 9002. It instructs bankruptcy courts to use the Federal Rules of Civil Procedure in any "adversary proceeding, or when appropriate, a contested petition, or proceedings to vacate an order for relief or to determine any other contested matter" within the bankruptcy rules. Teter describes Rule 9002 as defining the term "civil action" to include contested matters like a § 707(b) motion. But Rule 9002, remember, provides a definition for the bankruptcy rules, not the EAJA. And the bankruptcy rules cannot implicitly expand the scope of a congressionally enacted statute. *Cf.* 9 *Collier on Bankruptcy* ¶ 1001.01 (2023) (noting that the bankruptcy rules "may not abridge, enlarge, or modify any substantive right"). At day's end, if there is something special about bankruptcy motions to dismiss that makes them civil actions, Congress did not make that sufficiently clear.

Further complicating Teter's position is the fact that the EAJA requires fee applications to be filed "within thirty days of final judgment in the action." 28 U.S.C. § 2412(d)(1)(B). Denials of motions to dismiss bankruptcy petitions, however, are not considered final judgments. *In re Amir*, 436 B.R. 1, 8 (6th Cir. B.A.P. 2010). Teter's reading of the law thus leaves the EAJA's deadlines unmoored from the action that entitles one to attorneys' fees. Again, we doubt this is what Congress had in mind in enacting the EAJA.

All things considered, it is at the very least plausible to conclude that a § 707(b) motion to dismiss does not initiate its own civil action. The absence of an express waiver by Congress of sovereign immunity therefore bars us from lifting the veil of immunity protecting the United States Trustee. Accordingly, Teter is unable to avail herself of the EAJA. *See Ardestani*, 502 U.S. at 137.

B. We note another potential hurdle for Teter in seeking fees under the EAJA. The statute allows courts to award fees only when not "expressly prohibited by statute" and "[e]xcept as otherwise specifically provided by statute." 28 U.S.C. § 2412(b) & (d); *cf. EEOC v. Consol. Serv. Sys.*, 30 F.3d 58, 59 (7th Cir. 1994) ("[T]he [EAJA] provides . . . that nothing in it alters

any other provision of Federal law that authorizes an award of attorney's fees to a prevailing party in a suit by or against the United States." (cleaned up)).  This might mean that the EAJA takes a back seat when fees are sought for § 707(b) motions.  Recall that § 707(b)(5)(A) allows the bankruptcy court, "on its own initiative or on the motion of a party in interest, in accordance with the procedures described in rule 9011 of the [Federal Rules of Bankruptcy Procedure]," to "award a debtor all reasonable costs (including reasonable attorneys' fees) in contesting a motion filed by a party in interest (other than a trustee or United States trustee)."  Read together, these statutes might suggest that the Bankruptcy Code is the arbiter of when parties are entitled to attorneys' fees in bankruptcy proceedings, leaving the EAJA no seat at the bankruptcy table.  If so, § 707(b)(5)(A)'s prohibition against fee awards related to contesting a motion by the trustee would seem to foreclose Teter's request here.  But this argument is relatively underdeveloped by the parties, and Teter's request otherwise fails.  Accordingly, we flag the issue for future cases, but we do not reach it today.

III.

Finally, Teter argues that the district court violated Bankruptcy Rule 8019 when it denied her the opportunity to present an oral argument without making the threshold "necessary findings that oral argument was unnecessary."  The Rule in question instructs that "[o]ral argument must be allowed in every case unless the district judge . . . examine[s] the briefs and record and determine[s] that oral argument is unnecessary because . . . the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument."  Fed. R. Bankr. P. 8019(b).  Teter's reading of the Rule has many flaws.

One, Rule 8019 does not explicitly require an express finding of why oral argument will not take place, nor does Teter identify binding authority to that effect.  Two, Teter identifies no substantive aspect of her case that would have taken on new life during oral argument, instead relying on general platitudes that "the facts and law relied upon in the Appellate brief were not clear to the District Court."  And three, it bears reminding that we are reviewing the bankruptcy court's decision, not that of the district court.  Oral argument or not, what happened in the district court typically does not affect our review of the bankruptcy court's order and judgment.  *See In*

*re Kelley*, 703 F. App'x 668, 672 (10th Cir. 2017) ("Mr. Kelley first contends the [bankruptcy appellate panel] violated his due process rights by holding oral argument without him. Given our independent review of the bankruptcy court's decisions, we need not address this argument because the [panel]'s procedural ruling has no impact on the outcome of this case.").  In short, Teter is not entitled to relief on this ground either.

*       *       *       *       *

We affirm the judgment of the bankruptcy court.